In the

# United States Court of Appeals
## For the Seventh Circuit

No. 02-1286

MICHAEL E. GOLEMBIEWSKI,

*Plaintiff-Appellant,*

*v.*

JO ANNE B. BARNHART,
Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:01-CV-104—**William C. Lee**, *Chief Judge.*

ARGUED DECEMBER 17, 2002—DECIDED FEBRUARY 3, 2003
OPINION PUBLISHED MARCH 12, 2003*

Before BAUER, CUDAHY, and COFFEY, *Circuit Judges.*

PER CURIAM. Michael Golembiewski, a former auto-mobile radiator repairman, applied for disability insur-ance benefits at the age of 39 asserting that he could not work because of back problems and epileptic seizures. An administrative law judge denied benefits after finding that

---

* Pursuant to Circuit Rule 53, this decision was originally is-sued as an unpublished order. The court, upon request, issues the decision as a published opinion.

Golembiewski was not disabled when his eligibility for insurance expired, and the Social Security Administration's appellate council declined review. Golembiewski then brought this action in the district court, which upheld the agency's decision, and Golembiewski appeals. Because the ALJ insufficiently explained why he discredited Golembiewski's testimony, mischaracterized the medical evidence, and ignored evidence of Golembiewski's disability, we remand the case to the agency for further proceedings.

Golembiewski's medical records document a history of ailments stretching back to his childhood. As a child, Golembiewski had to have his right leg partially amputated because of a birth defect, and during early adulthood he began to have epileptic seizures on account of head injuries sustained during an accident. Because of his seizures, Golembiewski in 1992 was referred to the Mayo Clinic, where Dr. Elson So, a neurologist, prescribed the anticonvulsant Tegretol. The medication successfully controlled Golembiewski's epilepsy until 1994, when he returned to the clinic suffering frequent spells. In response, Dr. So instructed Golembiewski to increase his Tegretol dosage (and to abstain from alcohol), and by the end of 1994, Dr. So later reported, the seizures again were under control.

The event that led to Golembiewski's alleged disability occurred in November 1995. Golembiewski crashed his pickup truck into another truck, hit his head, injured his back, and again began having daily seizures. Upon examination at the Mayo Clinic, Dr. So suggested that Golembiewski's new seizures were related to the trauma (though he did not identify a precise cause). Dr. So also reported that following the accident Golembiewski complained of bowel and bladder urgency. And an MRI taken at the clinic revealed additional problems with Golembiewski's back, including a small area of myelomlacia (soften-

ing of the spinal cord) in his middle back, degenerative disk disease in his lower back, and two disk extrusions—one between two cervical vertebrae and the other between two thoracic vertebrae. Although the thoracic extrusion did not affect the spinal cord, the cervical extrusion did, and Dr. So thought that this deformity could explain the neck discomfort felt by Golembiewski after his car accident.

To combat the new seizures, Dr. So prescribed another anticonvulsant, Depakote, and within a few weeks the spells had stopped. With respect to the bowel and bladder problems, urologists at the clinic did not identify a neurological cause—though after finding two kidney stones, they instructed Golembiewski to drink more water. Golembiewski's back and neck pain, however, persisted for the next two years, and in August 1997 he went to Parkview Memorial Hospital in Fort Wayne, Indiana, complaining of "severe pain." There an emergency care center physician delivered Demoral intramuscularly, prescribed other painkillers, and scheduled Golembiewski to see Dr. Stephen Schroeder, a neurosurgeon. Dr. Schroeder found that Golembiewski had crepitance (crinkling) in his neck, limited flexion when performing low back motions, pain when performing straight leg raises from a supine position, and patchy hypesthesia (diminished sensitivity) on his left arm and chest. Reviewing an MRI taken earlier in February 1996, Dr. Schroeder also observed significant spondylosis (stiffening of the vertebrae) and a potential disk rupture between Golembiewski's diseased cervical vertebrae. After looking at another MRI from March 1996, Dr. Schroeder further saw disk degeneration in the lower back with probable "lumbosacral herniation."

In light of Golembiewski's significant soft tissue pain, Dr. Schroeder approved a course of physical therapy at Adams County Memorial Hospital in Decatur, Indiana. Unfortunately, physical therapy provided no relief, and in both February and April 1998, Golembiewski returned to

Adams County reporting back strain. That May Golembiewski also had another car accident after suffering a seizure. During this period Golembiewski reported that he was having seizures daily, and an electroencephalogram (EEG) performed in October 1998 showed abnormal electrical activity in Golembiewski's brain that was consistent with partial seizure disorder.

In January 1999 Golembiewski reported additional problems to his family practitioner, Dr. Michael Person. Golembiewski complained that he had developed numbness, weakness, and tingling in his upper extremities, making him unable to use his hands to hold onto objects. In addition, the following month Dr. Person noted that Golembiewski's right leg was draining fluid from a red lesion above his prosthesis. And in April 1999 Dr. Person again reported that Golembiewski was suffering from severe neck pain. That month Golembiewski also had another accident; he burned his left foot with a high-power pressure washer at his radiator shop, and his left leg became infected.

After burning his foot, Golembiewski applied for disability benefits. Dr. Sam Davis, a physician employed by the State of Indiana, then assessed Golembiewski's functional capacity to work and concluded that Golembiewski could perform several work-related tasks. Specifically, Dr. Davis determined that Golembiewski occasionally could lift up to twenty pounds, that he could stand and walk for two hours and sit for six hours (with breaks) during an eight-hour workday, and that he could use hand and foot controls without limitation. Dr. Davis also found that Golembiewski occasionally could balance, stoop, and crouch, but could never kneel, crawl, or climb stairs or ladders. According to Dr. Davis, Golembiewski needed to avoid machinery, heights, and slick or uneven surfaces because of his seizures.

The ALJ held a hearing in June 2000 at which Golembiewski testified and presented his medical records (many of which we have not discussed because they are redundant or irrelevant). At the hearing Golembiewski explained that he had problems walking because his prosthesis fit poorly, that he suffered a seizure once or twice a week lasting between four and five minutes, and that until as recently as December 1998 he had suffered seizures every four days. Golembiewski also testified that he had pain in his middle and lower back, that he could sit comfortably only for five minutes at a time, and that he periodically dropped items from his right hand.

The ALJ also solicited testimony from a vocational expert. The vocational expert explained that someone of Golembiewski's age, education, and work experience—who could not work around machinery because of seizures—would be able to work as an assembler, inspector, packager, or cashier. But when asked about the number of jobs for someone with Golembiewski's impairments, who could not sit or stand for more than five minutes, the vocational expert did not suggest any available jobs. He instead responded that a "selective job placement" would be required.

The ALJ denied Golembiewski's application for benefits. In his decision the ALJ first noted that Golembiewski was insured for disability benefits only through December 31, 1998, and that he needed to demonstrate a disability while he remained insured. During that time period, the ALJ concluded, Golembiewski's seizures were controlled by medication, he suffered neck and back pain, and his MRIs showed some disk degeneration and mild bulging, but no herniations. The ALJ also determined that despite Golembiewski's seizures, disk degeneration, and chronic pain, he retained the capacity for light work. After finding Golembiewski's own testimony not credible "for the reasons set forth in the body of the decision," the

ALJ determined from the vocational expert's testimony that Golembiewski could hold jobs as an assembler, packager, inspector, and cashier. Engaging in the familiar five-step analysis used to evaluate disability claims, 20 C.F.R. § 404.1572, the ALJ concluded that Golembiewski (1) did not have a job, (2) had a severe impairment, (3) did not have an impairment or combination of impairments listed in the agency's regulations, (4) could not return to his job repairing radiators, (5) but could work a significant number of jobs in the national economy. Golembiewski then appealed to the agency's appeals council, but his request for review was denied, making the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

We will uphold the Commissioner's decision if it is supported by substantial evidence and is free of legal error. 42 U.S.C. § 405(g). This is a deferential but not entirely uncritical standard, *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002), for the Commissioner's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues, *Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003). On appeal Golembiewski argues that the decision lacks the detail needed to permit meaningful review for three independent reasons: (1) the ALJ insufficiently explained why he discredited Golembiewski's testimony; (2) the ALJ mischaracterized the medical evidence discussed in his decision; and (3) the ALJ ignored significant other evidence that supported Golembiewski's claim. We consider these arguments in turn.

Golembiewski's first contention relies on the principle that ALJs must explain why they find an applicant's testimony unbelievable. Social Security Ruling 96-7p provides that ALJs must supply "specific reasons" for a credibility finding; the ALJ cannot state simply that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." SSR 96-7p. Here the

ALJ found Golembiewski's testimony—including his complaint that in 1998 he suffered weekly seizures and pain so severe that he could not sit or stand comfortably for more than five minutes—less than credible "for the reasons set forth in the body of the decision." Yet the body of the decision contains no reasons why the ALJ found Golembiewski's testimony unbelievable. The ALJ also failed to apply the factors for evaluating symptoms set forth in Social Security Ruling 96-7p, such as the degree to which Golembiewski's asserted limitations were consistent with the medical evidence or the ALJ's own observations. *See Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002); *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001); *Schaudeck v. Commissioner*, 181 F.3d 429, 433 (3d Cir. 1999).

The ALJ's inadequate credibility determination matters here because crediting Golembiewski's testimony would establish that he was disabled before December 31, 1998—the date on which his eligibility for benefits expired. With respect to his epilepsy, for example, Golembiewski testified that in December 1998 he suffered seizures every four days, and an EEG taken just two months earlier showed abnormal electrical activity in Golembiewski's brain consistent with partial seizure disorder. If the ALJ had credited Golembiewski's testimony about the frequency of his spells, then that evidence—in conjunction with the contemporaneous EEG—would suggest that Golembiewski was disabled under Social Security Listing 11.03. The listing provides for an automatic disability finding upon a showing of documented seizures "occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03; *see Steele*, 290 F.3d at 940 (collecting cases).

Similarly, Golembiewski testified that when his insurance expired he could not comfortably sit or stand for more

than five minutes. According to the vocational expert, inability to sit or stand for such a short period—coupled with Golembiewski's partially amputated leg, chronic back pain, and inability to drive or operate machinery because of seizures—would have required a "selective job placement." The vocational expert neither explained what he meant by a "selective job placement," nor identified any jobs that Golembiewski could work if his testimony were fully believed. To establish that Golembiewski was not disabled, the Commissioner needed to offer evidence of jobs that he could work. *See* 20 C.F.R. § 404.1520(f).

The Commissioner defends the ALJ's credibility determination on the theory that the body of the ALJ's decision implicitly supplies reasons for rejecting the testimony. With respect to the frequency of Golembiewski's seizures, the Commissioner says that the ALJ "clearly rejected" any suggestion that the seizures occurred every four days in 1998 because he found Golembiewski's seizures to be "well controlled." The Commissioner also speculates that even if Golembiewski had suffered seizures every four days in 1998, the spells occurred because he refused to follow prescribed treatment. Similarly, with respect to Golembiewski's testimony about his ability to sit and stand comfortably, the Commissioner says that the ALJ found that evidence to be incredible because he observed Golembiewski sitting for 40 minutes at the hearing.

The Commissioner's response is problematic for two reasons. First, nothing in Social Security Ruling 96-7p suggests that the reasons for a credibility finding may be implied. Indeed, the cases make clear that the ALJ must *specify* the reasons for his finding so that the applicant and subsequent reviewers will have a fair sense of the weight given to the applicant's testimony. *Steele*, 290 F.3d at 942; *Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *Schaudeck*, 181 F.3d at 433-34. Second, regardless of the requirements of Social Security Ruling 96-7p,

general principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 93-95 (1943); *Steele*, 290 F.3d at 941; *Pinto v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001); *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001). So the Commissioner's effort to pinpoint parts of the ALJ's decision that support the credibility finding is unhelpful.

In addition to containing an insufficient credibility determination, the ALJ's decision is further compromised by a mischaracterization of the medical evidence. Specifically, the ALJ discounted the significance of Golembiewski's MRIs taken before 1999 by remarking that they showed only "some disc degenerations" with "no herniations." But as Golembiewski correctly notes, the ALJ cited no evidence for his view that the MRIs showed no herniations. And according to Dr. Schroeder, an MRI from March 1996 actually showed disk degeneration with probable "lumbosacral herniation." The Commissioner does not explain how Dr. Schroeder's diagnosis of probable herniation can be squared with a finding of "no herniations," so we see no basis to sustain the ALJ's assessment of Golembiewski's MRIs.

What is more (not that more is needed), we also agree with Golembiewski that the ALJ ignored significant evidence supporting his claim. The ALJ must evaluate the record fairly. Thus, although the ALJ need not discuss every piece of evidence in the record, *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001), the ALJ may not ignore an entire line of evidence that is contrary to the ruling, *Zurawski*, 245 F.3d at 888. Otherwise it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence. *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). A remand is

required here because the ALJ improperly ignored three lines of evidence.

First, the ALJ entirely failed to discuss Golembiewski's bowel and bladder dysfunction. After his car accident in 1995, Golembiewski reported bowel and bladder urgency to Dr. So, who described the problem as "quite disabling." And in January 2000 Golembiewski told Dr. So that since 1997 he had suffered urinary incontinence two to three times a month—a problem that one doctor at the Mayo Clinic thought was possibly consistent with a "neurogenic bladder" (bladder dysfunction caused by malfunctioning nerves). The Commissioner says that discussion of this line of evidence was not required because Golembiewski was still working in 1997 and, in any event, his incontinence was too infrequent to significantly impact his ability to work. But that argument misunderstands the issue. Incontinence constitutes an impairment under the Social Security Act that must be considered to determine whether an applicant is disabled. *See Crowley v. Apfel*, 197 F.3d 194, 198-99 & n.17 (5th Cir. 1999) (collecting cases). Evidence that Golembiewski's bladder impairment did not interfere with his work therefore would be a reason for the ALJ to discount the disabling nature of the problem, but it would not justify ignoring the problem entirely as the ALJ did here.

Second, the ALJ's decision contains no discussion of Golembiewski's limited ability to bend on account of his bad back. After an examination in August 1997, Dr. Schroeder reported that Golembiewski could rotate his neck only 60 degrees and that motion in his lower back was reduced to 40 degrees of flexion, 15 degrees of extension, and 10 degrees of tilting. In contrast, Dr. Davis opined in his July 1999 report for the State of Indiana that Golembiewski could "stoop occasionally," meaning that he could bend at the waist for up to a third of an eight-hour day. *See* SSR 83-14. The reports of Dr. Schroeder

and Dr. Davis thus establish potentially conflicting assessments of Golembiewski's bending ability. Yet despite his obligation to resolve such conflicts, *e.g.*, *Scott*, 297 F.3d at 596; *see also Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000), the ALJ did not address either doctor's assessment—a significant omission since Golembiewski would have to bend at the waist occasionally in order to perform light work, SSR 83-10; *see Lauer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

The third line of evidence ignored by the ALJ concerns Golembiewski's propensity to drop objects because of tingling in his hands. Problems manipulating objects by hand reduces the number of jobs available to a disability applicant. *Sanders v. Sullivan*, 983 F.2d 822, 824 (8th Cir. 1992). The ALJ therefore needed to discuss Golembiewski's grasping impairment. True, the record contains no evidence of the impairment before December 31, 1998, when his eligibility for benefits expired, and Golembiewski needed to show that he was disabled before that date. *Callaghan v. Shalala*, 992 F.2d 692, 695 (7th Cir. 1993); *Armstrong v. Commissioner*, 160 F.3d 587, 589 (9th Cir. 1998). But Dr. Person reported that Golembiewski had begun to drop objects in January 1999—just two weeks after his insurance expired. Although Dr. Person's report does not specify whether the condition developed days or months earlier, the ALJ needed to develop a full and fair record. *Smith*, 231 F.3d at 437; *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). So instead of ignoring the issue, the ALJ should have elicited more information to determine when Golembiewski began to have grasping problems.

We close with an additional observation. Golembiewski has a host of significant medical conditions, including the partially amputated leg, epilepsy, back pain, bowel and bladder dysfunction, and grasping problems that we have discussed. Having found that one or more of Golembiew-

ski's impairments was "severe," the ALJ needed to consider the *aggregate* effect of this entire constellation of ailments—including those impairments that in isolation are not severe. 20 C.F.R. § 404.1523; *see also Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002); *Green v. Apfel*, 204 F.3d 780, 782 (7th Cir. 2000); *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000). On remand the agency must remember that a competent evaluation of Golembiewski's application depends on the total effect of all his medical problems.

The judgment of the district court is vacated, and the case is remanded with instructions to remand the case to the agency. We urge the Commissioner, when taking a fresh look at the matter, to assign a new ALJ to handle any additional proceedings deemed necessary. *See Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996).

VACATED and REMANDED.

A true Copy:

      Teste:

                          _____
                          *Clerk of the United States Court of Appeals for the Seventh Circuit*