**Ruth MCCOMBS, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant–Appellee.**

No. 03–3321.

United States Court of Appeals, Seventh Circuit.

Argued March 2, 2004.

Decided July 19, 2004.

Frederick J. Daley, Daley, Debofsky & Bryant, Chicago, IL, for Plaintiff–Appellant.

Karen L. Sayon, Social Security Administration, Office of the General Counsel, Chicago, IL, for Defendant–Appellee.

Before CUDAHY, RIPPLE, and DIANE P. WOOD, Circuit Judges.

### ORDER

Ruth McCombs applied for disability benefits and supplemental security income, claiming that constant pain in her back and legs prevented her from working. The Social Security Administration ("SSA") denied her application, and an administrative law judge ("ALJ") concluded that she was not disabled. The ALJ's decision became the SSA's final decision when the SSA's Appeals Council denied review. McCombs then brought this action in the district court, which upheld the ALJ's decision. McCombs appeals. Because the ALJ did not explain why he discredited McCombs's subjective complaints of pain, we vacate and remand.

### I

This appeal concerns McCombs's second application for disability benefits, which was filed in August 1998. Her previous application was denied in November 1997 after a hearing by an ALJ. McCombs appealed the denial to the SSA's Appeals Council, which denied review. McCombs agrees that this earlier decision is *res judicata, see Groves v. Apfel,* 148 F.3d 809, 810 (7th Cir.1998), and that she therefore is eligible for benefits only since November 18, 1997, the day after the ALJ issued his decision on her first application. In her 1998 application, McCombs alleged that constant pain in her back and left leg prevented her from returning to her previous work, which included jobs at a nursing home and a laundromat. Her claim was denied initially and on reconsideration, and she requested a hearing before an ALJ. In preparation for the hearing the ALJ reviewed the reports of five physicians, all of whom had diagnosed McCombs with various back problems, including scoliosis, degenerative disc disease, and arthritis, and treated her with a variety of prescription medications.

At the hearing in May 2000, McCombs testified that since 1995 she had been experiencing constant pain throughout her back. The pain, she stated, was particularly severe in her lower back and down her left leg, and had significantly worsened over the past few years. She related that as a result of the pain she could walk only half a block, stand only for a few minutes, lift no more than three pounds, and could not bend or stoop. She recounted that the only way she could obtain relief was by

reclining in a chair, a position in which she slept and spent most of the day. The medications she was taking at the time of the hearing reduced her pain by only about twenty percent. McCombs explained that her pain severely limited her ability to accomplish everyday tasks. She testified that she had difficulty bathing, cooking, and shopping but could do her laundry once a week. She could dress herself but could not put on her shoes. She generally did not leave the house except to attend an appointment with her doctor or her attorney or to sit outside in the front yard. She watched very little television and often read or wrote letters, but her pain regularly impeded her concentration on those tasks.

After hearing McCombs's testimony, the ALJ scheduled consultative psychological and physical examinations. Dr. Irena Walters conducted a psychological exam in October 2000. Dr. Walters noted that McCombs was cooperative, alert and oriented. McCombs spoke calmly, though she admitted to experiencing extreme frustration and anger over the length of the disability benefits process. McCombs was aware of current events, had sufficient short-term memory, and was able to do simple mathematical calculations. Dr. Walters diagnosed an AXIS I "Pain Disorder Associated with Both A Psychological Disorder and a General Medical Condition" as well as a non-specific depressive disorder. The only other psychological assessment of McCombs in the record, which was conducted in December 1998 in connection with her earlier disability application, similarly concluded that McCombs suffered from an AXIS I mood disorder due to chronic low back pain.

Dr. Suresh Mahawar conducted a consultative physical examination of McCombs in July 2000 to assess her residual functioning capacity ("RFC"). Dr. Mahawar noted that McCombs complained that she had experienced lower back pain for the last five years and that the pain radiated down both her legs, but particularly to her left. During the physical examination, Dr. Mahawar noticed no anatomic abnormality in McCombs's upper or lower extremities or in her spine. Dr. Mahawar noted that he could not test McCombs's straight leg raises because she could not lie down, but he found that she exhibited tenderness throughout her spine. Dr. Mahawar observed that McCombs had difficulty walking without a cane even though the lack of neurological findings suggested that she could walk short distances without an assistive device.

In considering McCombs's RFC, Dr. Mahawar considered the assessment of Dr. David Rothbart, a neurologist who had reviewed an MRI of McCombs taken in April 1998 and had concluded that McCombs's mild back problems were not severe enough to cause the pain she was experiencing. Dr. Rothbart noted that during his examination, McCombs was "tearful and hyperventilating" and that she refused to stand or to walk on her toes or her heels when requested. Her range of motion, Dr. Rothbart wrote, "appeared somewhat limited but was difficult to assess," and, similarly, "[h]er motor exam was very difficult to assess due to poor effort with her crying when asked to move any individual muscle group." Dr. Rothbart observed that McCombs's MRI showed degenerative changes at L3–4, L4–5, and L5–S1 and a mild bulge at L3–4 but concluded that he had "no explanations for the patient's pattern of symptoms, [and was unable] to relate them to her relatively mild changes on her MRI."

After considering Dr. Rothbart's report of McCombs's MRI, Dr. Mahawar diagnosed her with "chronic complex pain syndrome with significant psychiatric ov-

erlay." He advised that, as a result of severe deconditioning attributable to lack of muscle use, she was able to lift 15–20 pounds occasionally and 5–10 pounds frequently, stand or walk 1–2 hours per day and one-half hour at a time and could sit without limitation but could not climb, stoop, crouch, kneel, or crawl.

The ALJ reviewed the medical reports and McCombs's testimony and concluded that she could perform sedentary work involving standing or walking for two hours intermittently out of eight, sitting for six hours out of eight as long as she could change positions at will, and lifting ten pounds on a sustained basis. He agreed that McCombs suffered from degenerative disk disease but opined that the problem was "not so severe as to account for the intensity of pain and functional limitation alleged." The ALJ reasoned that McCombs's "most limiting impairment" was her pain disorder, but that the ailment nevertheless permitted her to do unskilled, routine work.

The ALJ then applied the five-step analysis outlined by 20 C.F.R. § 404.1520 and concluded that McCombs: (1) was not currently employed; (2) had a "severe" impairment; (3) did not have a listed impairment or combination of impairments; (4) was no longer able to perform her past relevant work; and (5) was able to perform the job of hand packer, of which 2,000 jobs existed in the greater Chicagoland area. The ALJ reached this conclusion after asking a vocational expert to assess the jobs that could be performed by a person 40 years old with a twelfth grade education who was limited to a "light work function, but would need a job that would allow for a change of position at will" without any "reaching above shoulder level." To account for McCombs's pain, he further limited the hypothetical to a "simple one-, two-step job" involving "low de-

grees of concentration." When the ALJ posed additional questions, the vocational expert noted that if McCombs could not sustain eight hours of employment or lost her concentration for substantial periods, then there would be no jobs that she could perform.

## II

On appeal McCombs argues that the ALJ erred by (1) improperly discrediting her testimony; (2) failing to consider the impact of her pain in assessing her residual functioning capacity ("RFC"); and (3) failing to account for her pain in his hypothetical to the vocational expert. This court will reverse the findings of the Commissioner if they are not supported by substantial evidence or are the result of an error of law. 42 U.S.C. § 405(g); *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir.2003). "This is a deferential but not entirely uncritical standard, for the Commissioner's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Golembiewski v. Barnhart*, 322 F.3d 912, 915 (7th Cir.2003) (internal citations omitted). We consider the entire administrative record but do not substitute our judgment "for that of the ALJ by reconsidering the facts, reweighing the evidence or resolving factual disputes." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

### 1. Credibility

McCombs first argues that the ALJ erred when he discredited her subjective complaints of pain, because he failed to provide specific reasons for his credibility finding. The ALJ never expressly stated that he found McCombs's testimony to be unworthy of belief; nevertheless, his conclusion that she could stand or walk for two hours intermittently, sit for six hours out of eight, and lift ten pounds can be

understood only if that is what he meant to imply. That conclusion expressly contradicts McCombs's testimony that her pain prohibited her from walking more than one-half block, standing for only a few minutes, carrying more than three pounds, and sitting in anything but a reclining position. McCombs argues that such a conclusion completely ignores the evidence supporting her complaints of pain and focuses only on the evidence supporting the conclusion that her ailments were not disabling, without any explanation justifying this approach.

In assessing credibility an ALJ should consider, among other things, the objective medical evidence, the claimant's treatment history, the consistency of her complaints, and his own observations of the claimant. 20 C.F.R. § 404.1529; Social Security Ruling 96–7p, 1996 WL 374186. But a lack of objective medical evidence does not necessarily mean that an ALJ will discredit a claimant's subjective complaints of pain:

> [T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.

SSR 96–7p, at *6; see also *Zurawski v. Halter*, 245 F.3d 881, 887–88 (7th Cir.2001) ("where the medical signs and findings reasonably support a claimant's complaint of pain, the ALJ cannot merely ignore the claimant's allegations"). Although an ALJ "need not discuss every piece of evidence in the record," this court has noted that he also "may not ignore an entire line of evidence that is contrary to the ruling." *Golembiewski*, 322 F.3d at 917.

The SSA correctly notes that the ALJ supported his ultimate decision by identifying a few instances in which McCombs's behavior contradicted her complaints that her pain severely limited her ability to walk, stand, sit, and lift. For example, the ALJ referred to Dr. Rothbart's observation that McCombs exhibited "hysterical behavior and uncooperativeness" during the May 1998 evaluation, and that he saw no medically determinable basis for her symptoms. The ALJ noted that essentially the same medical conclusions were reached at the July 2000 consultative examination (allegations of inability to move, without any sign of atrophy or neurological deficit). Moreover, the ALJ stated that even though McCombs "could not adequately cooperate at the internal medicine consultative examination because of hysterics and tearfulness," at the consultative psychological exam, she "specifically denied tearfulness or hopeless and helpless feelings" and "[h]er mood was not depressed but, rather, irritable."

McCombs correctly points out, however, that the ALJ's opinion does not mention any of the evidence contradicting his decision to discredit her subjective complaints of pain. Most notably, the ALJ's opinion includes no reference to the extensive evidence in the record showing that numerous doctors both diagnosed and treated McCombs for pain in her lower back and legs:

- In 1995 McCombs saw Dr. Claude Foreit, Sr., a general physician, complaining of pain in her back and left leg; he diagnosed scoliosis and mild degenerative changes in the spine and prescribed Lodine XL, Skelacin, Vicodin, and Hydrocodone for pain relief.
- In March 1996 McCombs complained to Dr. Gordon Shaw, a general physician, of pain in her back and legs, and Dr. Shaw diagnosed "Mild Lumbar Scoliosis with Mild Degenerative Changes in LS Spine with Nerve Involvement."

- In August 1997 McCombs informed Dr. W.P. Niles, an orthopedist, that she experienced pain in her back and legs and that she had trouble sitting, standing, walking, and laying down; Dr. Niles diagnosed arthritis and degenerative disk disease at L5–S1.
- In April 1998 Dr. Gonzalo Magsaysay, a general physician, prescribed Propoxyphene and Chlorzoxazone to relieve her pain.
- In September 1998 an MRI was conducted after McCombs went to the emergency room to obtain treatment for her pain, and the physician reviewing the MRI diagnosed osteoarthritic and discogenic degenerative change with mild effacement at L4–L5 as well as mild encroachment on the left lateral recess at L3–L4.
- %• In November 2000 Dr. Antonela Svetic, a neurologist, prescribed Prednisone, Klonopin, Paxil, and Elavil for pain relief.

Even Dr. Mahawar, on whose opinion the ALJ eventually relied, concluded after an examination in 1998 that McCombs suffered from chronic lower back pain with degenerative disc disease and generalized deconditioning with weakness. Since Social Security Ruling 96–7p specifically directs an ALJ to consider the consistency of a claimant's complaints and her treatment history, the ALJ's failure to discuss any of these records in his order makes it difficult at best for a reviewing court.

Another problem with the ALJ's opinion is the fact that it discusses only the psychological evidence supporting his conclusion that her pain disorder did not render her disabled, in spite of the fact that the ALJ himself concluded that McCombs's pain disorder was her "most limiting impairment." For instance, the ALJ noted simply that Dr. Walters's consultative psychological exam showed that McCombs

had at least "fair" ability to do things like maintaining a schedule, using judgment, and understanding, remembering and executing even complex instructions. The ALJ's only other statement about McCombs's psychological abilities was that notwithstanding her pain disorder, she retained the "capacity for at least unskilled, routine work that would not entail close interaction with supervisors, co-workers, or the general public."

The SSA argues that the ALJ's recognition that McCombs could "engage in mental work related functions" is enough to show that he gave adequate consideration to Dr. Walters's assessment that McCombs's pain symptoms would not prohibit her from working. But the ALJ had to show that he considered more than just the evidence that supported his conclusion, and Dr. Walters's opinion includes numerous examples of the way in which McCombs's pain disorder limited her abilities, none of which the ALJ discussed. Dr. Walters thought that as a result of her pain McCombs would have difficulty maintaining concentration, sustaining an ordinary routine without special supervision, and performing at a constant pace without an unreasonable number and length of rest periods, and that her pain symptoms would interfere with carrying out instructions and handling stress. The SSA argues the stress limitation lay behind the ALJ's decision to limit her work possibilities to jobs that did not involve close interaction with supervisors, co-workers, or the general public, but we do not know if that is the case. Worse, the ALJ's opinion did not explain the connection between McCombs's inability to handle stress and her pain disorder.

We conclude that the ALJ failed to connect the evidence before him with his conclusions. His apparent decision to discredit McCombs's testimony about her pain did

not explain why he dismissed the substantial evidence corroborating the existence of that pain. He could have concluded that her testimony was incredible—particularly given the lack of objective medical evidence supporting her complaints of pain—but because he acknowledged that there was objective medical evidence of degenerative disc disease and a pain disorder, he had a duty to explain why he did not believe her testimony about the intensity and persistence of her pain. *See Herron v. Shalala,* 19 F.3d 329, 334 (7th Cir.1994). We have no choice but to remand her case to the agency for further proceedings.

## 2. RFC Determination and VE Hypothetical

In light of our conclusion that the ALJ must reconsider the evidence regarding McCombs's pain, it is necessary also for the RFC determination to be considered on remand. The impairments that the ALJ found to be credible were included in his RFC determination, but the picture may change after remand, making it appropriate to keep this question open also. The same is true with respect to the hypothetical the ALJ posed to the VE. While the question he asked took into account the pain symptoms he found credible, this issue will need to be reconsidered in light of any new findings about pain on remand.

## III

Because the ALJ failed to explain why he had discredited McCombs's testimony and the other medical evidence that her pain prohibited her from concentrating, we VACATE the judgment and REMAND the case to the agency for further proceedings.