**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 15, 2009
Decided February 8, 2010

**Before**

TERENCE T. EVANS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 09-1742

| | |
|---|---|
| KATHERINE L. WILLIAMS-OVERSTREET,<br>    *Plaintiff-Appellant*,<br><br>    *v.*<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br>    *Defendant-Appellee*. | Appeal from the United States District Court for the Central District of Illinois.<br><br>No. 07-4083<br><br>Michael M. Mihm,<br>*Judge*. |

**O R D E R**

Katherine Overstreet claims that she was disabled by ulcerative colitis; back, neck, knee, and elbow pain; kidney problems; high blood pressure; depression; and memory problems. The Social Security Administration and an administrative law judge ("ALJ") denied her claims, and the district court affirmed the ALJ's decision. Mrs. Overstreet appeals, asserting that the ALJ committed several errors. We affirm the district court's judgment.

Mrs. Overstreet, who was born in 1958, applied in May 2003 for supplemental security income and disability insurance benefits, alleging that she had been disabled since March 2000. (She had previously filed disability applications in 1997 and 2000; those applications were

denied in 1999 and 2002, respectively.)  After the Social Security Administration denied her 2003 applications, she received a hearing before an ALJ in December 2005, at which she amended the claimed onset date of her disability to July 2003.

Mrs. Overstreet testified at the hearing that she stopped working as a data-entry clerk in July 2003 and began working again in May 2004 in customer care at the Moline/Quad Cities airport.  She worked 24 hours a week driving a golf cart to transport passengers who needed rides within the airport.  She sometimes had to push passengers in wheelchairs, a job that was hard on her back, arms, and legs.  Her work sometimes also required her to stand or sit at a podium for a six-hour shift checking passengers' boarding passes and identification.

Mrs. Overstreet testified that she could walk for less than half a block, stand for less than two minutes, and sit for less than two minutes before feeling pain.  She said she had difficulty bending, kneeling, and climbing stairs, but no problems using her hands.  Mrs. Overstreet testified that she could lift "Less than two pounds, three pounds, four pounds."  She also said that she often experienced headaches and had trouble remembering things because of her pain and high blood pressure.  She added that she sometimes had trouble keeping her mind on things — "You just get depressed, and you just kind of drift off at times" — but said she had no problems understanding things.

The ALJ posed a hypothetical question to George Paprocki, a vocational expert who testified at the hearing.  The question envisioned a 47-year-old woman with Mrs. Overstreet's past work experience and impairments:  ulcerative colitis, degenerative disc disease at the cervical spine, degenerative changes to the lumbar spine, a history of fibromyalgia, hypertension, chronic headaches, and a history of depression.  The woman could not lift more than 10 pounds or stand or walk more than two hours in an eight-hour day; would need "to alternate sitting or standing" at one-hour intervals; and could only occasionally bend, squat, or crawl.  The woman would also need to avoid climbing and rapid changes of position, and would require access to a restroom.  She would be able to do work of the same degree of skill, complexity, and detail that Mrs. Overstreet had done in the past.  The vocational expert testified that such a woman could perform Mrs. Overstreet's past jobs of data-entry clerk and administrative assistant, both of which were sedentary.

The ALJ denied Mrs. Overstreet's claim under the required five-step analysis.  See 20 C.F.R. §§ 404.1520, 416.920.  He found, based on her earnings, that Mrs. Overstreet performed substantial gainful activity from January 2005 to December 2005 and thus was not disabled during that period (step one).  He then analyzed her claim of disability between July 2003 and December 2004 and found that Mrs. Overstreet had a combination of severe impairments (step two); that she did not have an impairment or combination of impairments

that met the criteria of any listed impairments (step three); and that she retained the residual functional capacity to perform past relevant work as a data-entry clerk or administrative assistant (step four) and other work in the national economy (step five). The Appeals Council denied Mrs. Overstreet's request for review of the ALJ's decision, making the ALJ's decision the Commissioner's final decision. The district court affirmed with a detailed and thoughtful opinion that has made our task considerably easier.

The standard for disability claims under the Social Security Act is stringent. The Act does not contemplate degrees of disability or allow for an award based on partial disability. *Stephens v. Heckler*, 766 F.2d 284, 285 (7th Cir. 1985). Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful. We uphold an ALJ's decision if substantial evidence — evidence a reasonable mind might accept as adequate — supports it. See 42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Id.*; *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). We view the record as a whole but do not re-weigh the evidence or substitute our judgment for the ALJ's. *Terry*, 580 F.3d at 475.

## I. Opinions of State-Agency Psychologists

Mrs. Overstreet first argues that the ALJ erred in determining that she was not disabled by ignoring the conclusions of two state-agency psychologists in 2000 that her depression moderately restricted her daily living, caused her moderate difficulty in maintaining social functions, and caused either moderate (according to one psychologist) or marked (according to the other) deficiencies in concentration, persistence, or pace.

Recall, however, that Mrs. Overstreet had amended the onset date of her disability from 2000 to 2003. The ALJ limited evidence created before the claimed onset date "to the purpose of providing a foundation for consideration of the claimant's *current* disability status." (Emphasis added.) (The psychologists' conclusions from 2000 were considered as part of her previous disability claim, which was denied in 2002.) The ALJ in this case found that Mrs. Overstreet's impairments included a history of depression rather than depression itself. Nothing in the record indicates that she received mental health treatment during the claimed disability period or that the limitations from 2000 persisted after the 2003 onset date.

Substantial evidence supported the ALJ's conclusion that Mrs. Overstreet's depression did not limit her ability to work. He noted that in 2003 Mrs. Overstreet told her primary care provider, Dr. K.N. Kacha, that she was depressed. An exam at that time indicated that Mrs.

Overstreet's mood and affect were abnormal, but her judgment, insight, orientation to time, place, and person, and her recent and remote memory were all normal. Mrs. Overstreet herself testified that she had trouble remembering day-to-day things because of her pain and high blood pressure and that she had trouble keeping her mind on things because she got depressed. But she said she had no trouble understanding things and that when she felt stress at work, she would "suck it in" and continue her job "because I love people, and I'm not going to make them wait because I don't feel good."

## II.  Conflict Between Vocational Expert's Testimony and the Dictionary of Occupational Titles

Mrs. Overstreet next argues that the ALJ violated Social Security Ruling 00-4p when he failed to ask the vocational expert whether his testimony conflicted with the Dictionary of Occupational Titles ("DOT"). The vocational expert concluded that the worker in the ALJ's hypothetical question could do sedentary work. Mrs. Overstreet contends that the expert's testimony assumed from the ALJ's question a need for the worker to alternate sitting and standing every hour and thus conflicted with the DOT's description of sedentary work as work that "involves sitting most of the time, but may involve walking or standing for brief periods of time." Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 (Westlaw).

An ALJ has an affirmative responsibility to ask a vocational expert about any possible conflict between evidence the vocational expert provides about a job's requirements and information in the DOT. If the expert's testimony "appears to conflict with the DOT," the ALJ "will obtain a reasonable explanation for the apparent conflict." SSR 00-4p. But not asking a vocational expert about a conflict is a harmless error if there is no actual conflict. See *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009).

There was no conflict here. The record shows that the ALJ's question did not require the worker to alternate every hour *between* sitting and standing; the context of the question establishes that the ALJ was referring to hourly breaks *from* sitting *or* standing. The ALJ, in fact, clarified for the vocational expert that the worker would be able to stand or walk for two hours and sit for six hours in an eight-hour day. R. 885. The vocational expert then testified that if the worker could "take a short break after an hour," the worker could perform Mrs. Overstreet's sedentary and past relevant work as a data-entry clerk or administrative assistant. Because that testimony is compatible with the DOT's description of sedentary work, see *Terry*, 580 F.3d at 478, and because the DOT's description did not conflict with the limitations imposed by the ALJ in his hypothetical question, see *Ketelboeter v. Astrue*, 550 F.3d 620, 625-26 (7th Cir. 2008), the ALJ's failure to ask was a harmless error.

### III.  The ALJ's Credibility Finding

Mrs. Overstreet also argues that the ALJ failed to comply with Social Security Ruling 96-7p by improperly discrediting her testimony without analyzing her pain in light of the medical evidence.  In particular, she points to a review of her medical records by Dr. George Kudirka and Dr. Francis Vincent, state-agency doctors who opined that Mrs. Overstreet's complaints — that she could not sit or stand for long periods, or walk more than half a block, because of pain in her neck, back and legs — were consistent with her colitis, degenerative disc disease, and fibromyalgia.

In evaluating the credibility of Mrs. Overstreet's statements about her impairments and their effect on her ability to work, the ALJ had to consider all of the evidence in the record, including medical signs and laboratory findings, opinions provided by treating and examining physicians and psychologists, and statements or reports by Mrs. Overstreet and those who treated or examined her about her medical history, treatment, work history, daily activities, and ability to work.  SSR 96-7p.  A reviewing court may reverse an ALJ's credibility determination only if it is so lacking in explanation or support that it is "patently wrong." *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008).

There is more than adequate support for the ALJ's credibility determination in this case.  Although he noted that Mrs. Overstreet claimed that she felt pain after walking less than half a block, or standing or sitting for less than two minutes, the ALJ also observed — as he was permitted to do — that she was able to sit for the length of the hearing, which lasted about an hour.  See SSR 96-7p ("In instances where the individual attends an administrative proceeding conducted by the adjudicator, the adjudicator may also consider his or her own recorded observations of the individual as part of the overall evaluation of the credibility of the individual's statements.").  The ALJ further noted that treatment records did not corroborate the pain and restrictions that Mrs. Overstreet alleged.  Despite her statement in October 2005 that she had seen countless doctors with no relief for her pain, the record did not contain records from numerous healthcare providers.  According to the physician she saw in November 2002 for her headaches, she did not follow through on the physician's recommendations of pain clinics and an epidural injection.  Even more important, no physician had opined that she was totally disabled or recommended treatment suggesting it.

The ALJ's assessment of Mrs. Overstreet's capacity and limitations tracks that of Dr. Kudirka and Dr. Vincent, which belies her argument that the ALJ ignored their opinions.  The doctors affirmed an assessment of Mrs. Overstreet's residual functional capacity in July 2003 concluding — in contrast to Mrs. Overstreet's testimony that she could lift less than two or four pounds — that she could frequently lift less than 10 pounds and could occasionally lift 10

pounds. The ALJ made a similar assessment. The doctors agreed that with normal breaks, Mrs. Overstreet could stand or walk for at least two hours and sit for about six hours in an eight-hour workday. The ALJ made the same assessment. And the doctors agreed that the evidence supported a residual functional capacity that included sedentary work.

### IV.  The ALJ's Residual Functional Capacity Assessment

Finally, Mrs. Overstreet argues that the ALJ's assessment of her residual functional capacity was flawed because the ALJ:  (1) "played doctor" and arbitrarily found that she needed to alternate sitting and standing every hour; (2) relied on her part-time work at the airport to find that she could work full-time; (3) did not include limitations from her headaches and limited range of motion in her neck in his assessment; and (4) did not properly consider her pain from the combined effect of all of her impairments.

The ALJ did not play doctor; his findings were consistent with testimony and medical evidence, as required.  See *Hopgood v. Astrue*, 578 F.3d 696, 702 (7th Cir. 2009).  As explained, the ALJ's finding that Mrs. Overstreet needed "to alternate sitting and standing at one hour intervals" referred to hourly breaks from sitting or standing — not to a need to alternate each hour between sitting and standing — and came after the ALJ observed her sitting for approximately an hour.  Although medical reports noted that pain prevented Mrs. Overstreet from sitting or standing for long periods of time, no doctor suggested that she needed breaks more frequently than once an hour.  And the ALJ found that she could stand or walk for only two hours in an eight-hour workday and needed to sit for at least six hours.  Dr. Kudirka and Dr. Vincent drew the same conclusion.

The ALJ also properly considered Mrs. Overstreet's part-time work in his assessment. Although a claimant with a job may still be found disabled, see *Gentle v. Barnhart*, 430 F.3d 865, 867 (7th Cir. 2005), an ALJ's assessment of residual functional capacity must be based on the relevant evidence in the record, which includes "reports of daily activities" and "evidence from attempts to work," see SSR 96-8p.  It was reasonable for the ALJ to conclude that Mrs. Overstreet's job at the airport — transporting passengers in a golf cart, and sometimes pushing them in wheelchairs, six hours a day, four days a week — suggested that her impairments did not limit her as much as she claimed, and that she could perform sedentary work as a data-entry clerk or administrative assistant. The vocational expert said that Mrs. Overstreet's airport job required "medium" exertion.  A person who can do such work is ordinarily also considered physically able to do sedentary work.  See 20 C.F.R. § 404.1567(c).

Mrs. Overstreet's argument that the ALJ's assessment of residual functional capacity failed to include her limitations due to headaches and the limited range of motion in her neck

is also not persuasive. It was Mrs. Overstreet's burden to bring to the ALJ's attention everything that showed she was disabled. 20 C.F.R. § 404.1512; see *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994). She has not pointed to anything in the record suggesting that her headaches or her range of motion in her neck limited her at work.

Finally, Mrs. Overstreet's contention that the ALJ did not properly consider her complaints of pain caused by the aggregate effects of all her impairments fails because the ALJ ensured that the vocational expert took all of her impairments into account when answering the hypothetical question. The ALJ was required to consider the combined effects of Mrs. Overstreet's impairments because he found them to be severe in combination. See 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Although he did not specifically address the combined effect in his ruling, he complied with § 404.1523 by including all of her impairments in his hypothetical question to the vocational expert. See *Sims v. Barnhart*, 309 F.3d 424, 432 (7th Cir. 2002).

Accordingly, we **AFFIRM** the district court's judgment affirming the Commissioner's denial of benefits.