**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 3, 2018[*]
Decided May 3, 2018

**Before**

JOEL M. FLAUM, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2733

| | |
|---|---|
| DESIREE PARKER, for D.R.S., a minor<br>    *Plaintiff-Appellant*, | Appeal from the United States District<br>Court for the Central District of Illinois. |
| *v.* | No. 16-2143 |
| NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration.<br>    *Defendant-Appellee*. | Harold A. Baker,<br>*Judge*. |

**O R D E R**

Desiree Parker appeals the denial of supplemental security income to D.S., her minor son. Parker alleges that D.S. became disabled in 2011, when he was diagnosed with ADHD and asthma. His application was denied initially, on reconsideration, and after a hearing before an Administrative Law Judge. Parker argues that the district court erred in upholding the denial of benefits because the ALJ's decision was unsupported and based upon an incomplete record. She also objects to the ALJ's reliance on the

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

testimony of a medical expert. But because the ALJ's decision was supported by substantial evidence, and Parker is mistaken about the record, we affirm the judgment.

D.S. began having symptoms in 2010 when he was four years old. He chewed on his clothes, fought with his siblings, and behaved disruptively at home and at school. He was diagnosed with ADHD a year later and began taking Adderall. D.S. has taken Adderall in varying doses since then, though at times it is not administered consistently by his caregivers. Dr. Holly Maes, his pediatrician, has over time increased his dosage and added other drugs. Despite D.S.'s issues at home, his first-grade teacher's reports were positive. She described D.S. as a "bright student who does not display behavior or academic difficulties" in the classroom. Even in the areas in which she observed his difficulties, such as completing tasks, she qualified that those problems arose only three times during the year.

Dr. Maes referred Parker to a child psychiatrist for anger-management treatment because D.S. continued to be very disruptive at home. For example, Parker testified that D.S. fights violently with his brother (a recipient of disability benefits himself) and cannot tend to his personal hygiene.

Two state-agency physicians reviewed D.S.'s file in 2012. Dr. Joseph Mehr, a psychologist, and Dr. Sandra Bilinsky, a pediatrician, both concluded that D.S. had the impairments of ADHD and asthma. They opined that his ADHD was not severe and his asthma was severe but well-controlled. (There is no evidence that D.S. ever sought medical attention for problems with his asthma.) They further found that D.S. did not have an impairment or combination of impairments that met or equaled a listing describing a presumptive disability, and that D.S. had no limitations in two domains and only less-than-marked limitations in the remaining four domains. In 2013, two more state-agency doctors reviewed the record and concluded the same.

After D.S.'s application was denied on reconsideration, Parker requested a hearing before an ALJ. At the hearing, Parker testified (by videoconference) that D.S. was getting good grades and was doing well at school as long as he took his medication every day. But his problems at home—fighting with his brother and being defiant—were severe. Parker said she was unable to get D.S. into anger-management counseling because of a long waitlist.

Dr. Sai Nimmagadda, an impartial medical expert, also testified at the hearing (and also by videoconference). He opined that D.S. has ADHD and asthma, but that

these impairments did not meet or equal any of the listings. The doctor also found that D.S. had only less-than-marked limitations in two of the relevant functioning areas.

The ALJ decided that D.S. was not disabled and denied the application for benefits. He agreed with Dr. Nimmagadda and the reviewing physicians that D.S. did not have any impairments that met or equaled a listing, noting that D.S. was doing well when he took his medication. The ALJ did not find that D.S. had marked limitations in two domains of functioning or an extreme limitation in one domain of functioning.

Parker appealed the decision to the district court, arguing that the record was incomplete and that the ALJ ignored evidence and wrongly relied on the expert's testimony. The state of the record seems to have been her most pressing concern—Parker filed six motions trying to get a corrected transcript of the hearing, to get a new copy of the compact discs containing the administrative record (because she could not open the encrypted discs that were provided to her), and to supplement the record with evidence she believes was omitted. Most of these requests were opposed by the agency and all were denied (except one for which we can find no ruling). Parker did, however, receive four extensions of time based on her difficulty accessing and locating the record.

Parker contends on appeal that the record is still incomplete. Many of her complaints stem from her inability to use the two compact discs containing the electronic record, which the agency sent her after the initial denial of benefits. Because Parker could not use the encrypted discs, she went to the district clerk's office to review the physical record. But she could not find documents including the ALJ's decision and the form recognizing her as D.S.'s representative; this led her to believe the record had been doctored. Her confusion was somewhat understandable, given that she had limited time to review the record and had to navigate the new pagination in the consolidated record. But everything that Parker says was missing is, in fact, present in the record, so there is no relief to give her. *See Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) (noting burden is on claimant to identify "any missing evidence that renders the record incomplete"). And although she could not find the ALJ's decision in the record, she was able to access a copy, because she referred to it in her district-court brief. We note that the agency, as a courtesy, could have prevented much of Parker's distress (and, for its own benefit, the need to respond to multiple motions for extensions and to correct the record), by sending a hard copy, making another CD, or offering technical advice.

Parker also had good reason to doubt the accuracy of the hearing transcript, given the misspelling of the medical expert's name—"Cyra Numgotta" for "Sai Nimmagadda"—and the mischaracterization of D.S. as "unrepresented" and Parker as a witness, not as D.S.'s representative as well. But ultimately we determine that Parker points only to sloppiness, not substantive mistakes that prejudiced her. And though Parker believes she testified differently, she does not identify with certainty any statement that was excluded. We cannot conclude that any irregularities in the transcript compel a remand because Parker has not shown that otherwise the outcome of her hearing would have been different. *Webster v. Astrue*, 580 F. Supp. 2d 785, 795 (W.D. Wis. 2008), citing *Ortiz–Salas v. Immigration and Naturalization Servs.*, 992 F.2d 105, 106 (7th Cir. 1993).

Parker next argues that the ALJ failed to consider records from before 2012, particularly assessments recounting D.S.'s significant behavioral problems in kindergarten. The ALJ did cite some evidence from 2011, but it is not the evidence that Parker wanted the ALJ to cite. Even though Parker wanted the ALJ to discuss evidence that D.S. struggled in kindergarten (presumably because his limitations in school were more evident then, since he had not been diagnosed or treated), an ALJ is not required to discuss every piece of evidence in the record. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). We cannot find for Parker because the ALJ did not "ignore an entire line of evidence that is contrary to the ruling." *Id.*

Next Parker argues that the ALJ should not have assigned great weight to the opinions of Dr. Nimmagadda and reviewing physicians. But D.S.'s own doctor did not opine that D.S. had any limitations, so "[t]his is not a case where a treating physicians' opinion was disregarded in favor of the opinion of a consulting physician," *Young v. Barnhart*, 362 F.3d 995, 1001–02 (7th Cir. 2004). Finally, Parker does not show that the taking of testimony through videoconference prejudiced her, though she believes it detracted from Dr. Nimmagadda's credibility somehow. Without a contradictory medical opinion in the record, the ALJ was at liberty to adopt the expert's and the agency doctors' conclusions. *See Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004).

The only evident problem with the ALJ's opinion is his credibility determination. The ALJ stated that Parker was "not entirely credible," but did not support that statement with any reasoning. But, on appeal, Parker abandons her challenge to the credibility finding.

Although Parker has demonstrated that D.S. faces substantial challenges, and that she has had unnecessary difficulty litigating her case, we cannot find in her favor because the record supports the ALJ's decision. We have considered Parker's other arguments (including that D.S.'s medical privacy rights were violated even though Parker consented to disclosures, and that D.S. should get the same benefits as his disabled brother) and find that none has merit. The judgment is AFFIRMED.