Jose ORTIZ–SALAS, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,** Respondent.

No. 92–2369.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 19, 1993.

Decided April 22, 1993.

Douglas Schoppert, Coursey & Schoppert, Chicago, IL (argued), for petitioner.

William J. Howard, David J. Kline, Robert Kendall, Jr., William P. Barr, Anthony W. Norwood (argued), Dept. of Justice, Office of Immigration Litigation, Washington, DC, A.D. Moyer, I.N.S., Chicago, IL for respondent.

Before BAUER, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

An alien who has been a lawful permanent resident of the United States for at least

seven years and is ordered deported can ask the Attorney General for the discretionary remedy of relief from deportation. Immigration and Nationality Act § 212(c), 8 U.S.C. § 1182(c); *Variamparambil v. INS*, 831 F.2d 1362, 1364 n. 1 (7th Cir.1987). Jose Ortiz–Salas applied for relief under this provision, was turned down by an immigration judge whose decision was affirmed by the Board of Immigration Appeals, and now asks us to set aside the Board's order. A citizen of Mexico, Ortiz came to this country in 1977, at the age of 15, with his family. He became a lawful resident in 1982. In 1989 he pleaded guilty in an Illinois state court to possession with intent to sell cocaine and marijuana and was sentenced to nine years in prison. He concedes that he is deportable and further admits that he sold drugs for years before his arrest and stopped only because he was arrested. But he claims that he should be relieved from deportation because he has lived in this country for so many years, his parents and siblings are permanent residents, he has two young children who will not accompany him if he is forced to return to Mexico, and his family and the prison chaplain believe that he is sincerely repentant, has given up drugs and alcohol for good, and will not commit further crimes upon his release. The immigration judge believed that Ortiz's 15 years of U.S. residence was an "outstanding equity" and that his deportation would be a hardship to his family, but was skeptical that he had been totally rehabilitated and concluded that his "equities" were outweighed by the gravity of his crime. The Board affirmed, finding no abuse of discretion by the immigration judge and adding that unlike him the Board would not have given Ortiz any credit for his five years of illegal residence (1977–1982) in calculating his equities.

Ortiz makes two arguments that require discussion. The first is that he was denied due process of law because the transcript of the hearing before the immigration judge that was submitted to the Board contains 292 notations by the reporter to the effect that a word or words in testimony by Ortiz and by the prison chaplain were "indiscernible" or "inaudible." The INS acknowledges that it is responsible for preparing the record of the deportation hearing, and forwarding it to the Board, if the alien appeals from the immigration judge's order. 8 C.F.R. § 3.5; *Okoroha v. INS*, 715 F.2d 380, 384 (8th Cir.1983); *In re Holani*, 17 I & N Dec. 426 (BIA 1980). The INS's regulations further provide that the hearing shall be recorded. 8 C.F.R. § 242.15. They do not require that if the mode of recording is electronic rather than stenographic the recording be transcribed, but the Board has held that if there are testimonial issues it must be. Compare *In re Cruz*, 16 I & N Dec. 463 (BIA 1977), and *In re Holani*, *supra*, with *In re Ambrosio*, 14 I & N Dec. 381 (BIA 1973). Although the government's lawyer blames Ortiz and the chaplain for mumbling, we can assume for purposes of this appeal that the government breached its duty to prepare a reasonably accurate, reasonably complete transcript. But we do not think it is a reversible error. Harmless errors no more justify reversal in a deportation case than in a criminal case. *Shahandeh–Pey v. INS*, 831 F.2d 1384, 1389 (7th Cir.1987); *United States v. Cerda–Pena*, 799 F.2d 1374, 1379 (9th Cir. 1986). And not every procedural error that is not harmless violates due process—only those so grave, so egregious, as to create, in the circumstances of the case, a serious risk that the error caused a miscarriage of justice, such as the conviction of an innocent person. *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962); *Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir.1988). A litigant who seeks reversal on the ground of a denial of due process that is due to an inaccurate or incomplete transcript is therefore required to make the best feasible showing he can that a complete and accurate transcript would have changed the outcome of the case. This is the usual requirement in cases where reversal is sought on the basis of missing documents or transcripts, *Bransford v. Brown*, 806 F.2d 83, 86 (6th Cir.1986); *Mitchell v. Wyrick*, 698 F.2d 940, 941–42 (8th Cir.1983); *Price v. Lake Sales Supply R.M., Inc.*, 510 F.2d 388, 392 (10th Cir.1974), and, having due regard for the heavy workload of the Board of Immigration Appeals, we can see no reason not to apply it here. *Lopez–Reyes v. INS*, 694 F.2d

332 (5th Cir.1982), is authority for this application.

Although Ortiz is ably represented, his lawyer before the Board, who also represented him at the hearing before the immigration judge, made no effort to show that the testimony that was not transcribed was material. The lawyer could have submitted an affidavit based on his own recollections, or those of his client, or those of the chaplain. He could at the very least have asked to listen to the tape from which the defective transcript was made—he concedes that he had access to that tape. He did none of these things. We infer that the omitted testimony would not have helped his case. We note in this connection that Ortiz's case for relief from deportation was very weak. When arrested on serious drug charges he had been a lawful resident for only seven years, the hardships he alleges are the kind experienced by most deported persons, and postconviction repentance has little credibility. The prison chaplain admitted in his testimony that he didn't know what crime had landed Ortiz in prison. Had he known of Ortiz's history of drug and alcohol abuse and drug dealing, he might have been less sanguine about the prospects for his rehabilitation.

This said, we do not condone the INS for its sloppy handling of the record and its ungenerous suggestion that Ortiz's counsel should have listened to the tape and tried to make some sense out of it though the court reporter hired by the government had not been able to do so. It was the government's responsibility to prepare the transcript, so if anyone should have listened to the tape besides the reporter and made a new transcript it should have been the government's lawyer. But the Supreme Court has told us that the power of reversal is not to be used to punish prosecutorial misconduct when there is no indication that it affected the outcome. *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254–57, 108 S.Ct. 2369, 2373–75, 101 L.Ed.2d 228 (1988); *United States v. Hasting,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The principle is equally applicable to deportation.

■ We said earlier that the Board had affirmed on the basis that the immigration judge had not abused his discretion in denying relief from deportation. Ortiz argues that he was entitled to plenary review by the Board, and he cites cases in which the Board indeed granted the appellant who was challenging denial of section 212(c) relief plenary review of the immigration judge's ruling denying relief. *In re Coelho,* Int. Dec. 3172 (available on WESTLAW, FIM–BIA database), 1992 BIA Lexis 7 (April 30, 1992); *In re Edwards,* Int. Dec. 3134 (available on WESTLAW, FIM–BIA database), 1990 BIA Lexis 8 (May 2, 1990); see also *In re Montenegro,* Int. Dec. 3192 (available on WESTLAW, FIM–BIA database), 1992 BIA Lexis 26 (Nov. 18, 1992); Thomas G. Finucane, "Procedure Before the Board of Immigration Appeals," 31 *Interpreter Releases* 26, 29–30 (1954); 1 Gittel Gordon & Charles Gordon, *Immigration Law and Procedure* § 3.05[5][b] at p. 3–61 (1992). The government ripostes rather astonishingly that the Board has no fixed standard of review–sometimes it reviews the immigration judge for abuse of discretion, sometimes it reviews him de novo.

■ That won't do. It is an undue hardship to require the alien to guess at the standard of review that will be applied to his appeal, or, if he doesn't want to roll the dice, to argue his appeal in light of all possible standards of review. And it is irresponsible for the Board to fail to define its relationship to the immigration judges. Of course court of appeals judges frequently disagree among themselves about the proper standard for reviewing district judges, but our complaint is not that the Board has had difficulty hammering out a position but that it seems not to have noticed that there is an issue. Obviously it believes that the balancing of equities required by an application for relief under section 212(c) is the sort of judgmental, particularistic issue fairly described as discretionary. The statute says so ("may be admitted in the discretion of the Attorney General," 8 U.S.C. § 1182(c)), the Board says so, e.g., *In re Marin,* 16 I & N Dec. 581, 584–85 (BIA 1978), and the appellate courts say so, e.g., *Bastanipour v. INS,* 980 F.2d 1129, 1131 (7th Cir.1992); *Cordoba–Chaves v. INS,* 946 F.2d 1244, 1247 (7th Cir.1991); *Shahandeh–Pey v.*

*INS, supra,* 831 F.2d at 1387. The question on which the Board seems not to have made up its mind is whether the immigration judge is a sufficiently responsible officer to justify the Board's in effect delegating the making of the necessary discretionary judgment to him, subject only to the limited review implied by the abuse of discretion standard; or whether the Board should make the discretionary judgment itself, giving no particular weight to the immigration judge's determination. Agencies generally are free to substitute their judgment for that of their hearing officers, *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 492, 71 S.Ct. 456, 467, 95 L.Ed. 456 (1951), though there are exceptions, *Chicago Tribune Co. v. NLRB,* 974 F.2d 933, 935 (7th Cir.1992), not limited to the case stressed in *Universal Camera* (and applicable to some cases of review by the Board as well, 1 Gordon & Gordon, *supra,* § 3.05[5][b] at p. 3–62), where the hearing officer has made determinations about the credibility of witnesses. 340 U.S. at 492–97, 71 S.Ct. at 467–69; *Chicago Tribune Co. v. NLRB, supra,* 974 F.2d at 934–35. All we ask is that the Board of Immigration Appeals indicate what standard of review it means to use in these cases. The government's lawyer stated, incoherently, that if the Board agrees with the immigration judge, it applies the abuse of discretion standard; if it does not, it reviews him de novo. But if the Board poses the question as whether it agrees with the immigration judge, then it is reviewing him de novo. To agree is to make an independent judgment that coincides with that of the person with whom one agrees. To review for abuse of discretion is to uphold determinations with which the reviewing court may very well disagree.

It is high time that the Board of Immigration Appeals examined its relationship to the immigration judges. But, to repeat an earlier point, we cannot reverse because of an error that makes no difference to the outcome of the case that is before us. While purporting to review the immigration judge merely for an abuse of discretion, the Board made more than clear that it thought that Ortiz should be deported. It agreed with everything the immigration judge had said against relief from deportation and added

that if it had been making its own determination it would not have credited Ortiz with his years of illegal residence, thus knocking out his principal equity, since his seven years of legal residence (prior to his imprisonment) seem to have been given over, to a significant extent, to illegal trafficking in drugs. The Board of Immigration Appeals has not covered itself with glory in this proceeding but it committed no reversible error and its order denying Ortiz relief under section 212(c) of the Immigration and Nationality Act must therefore be

AFFIRMED.