**Ola ALADE and Olaide O. Alade, Petitioners,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–3297.

United States Court of Appeals, Seventh Circuit.

Argued June 2, 2003.

Decided June 18, 2003.

Before POSNER, EASTERBROOK, and WILLIAMS, Circuit Judges.

## ORDER

Nigerian citizens Ola and Olaide Alade sought asylum in the United States. An immigration judge denied their request, and the Board of Immigration Appeals ("BIA") affirmed. On appeal, the Alades assert that the transcript of their removal hearing was inadequate, the immigration judge failed to review various country reports on Nigeria, and both the immigration judge and the BIA failed to address the possibility that the Alades' female children might be subjected to female genital mutilation ("FGM") in Nigeria. Because the Alades failed to show that they were prejudiced by the "indiscernible" transcript references, failed to provide certain trip reports, and failed to properly raise their FGM claim before the immigration judge or the BIA, we affirm.

## I.  BACKGROUND

Husband and wife Ola and Olaide Alade are Nigerian citizens who came to the United States with visitor's visas in 1989 and 1990, respectively. They have three girls ages 4, 7, and 11, all U.S. citizens. Both Mr. and Mrs. Alade stayed beyond their visa expiration dates and filed for asylum in 1993. Mrs. Alade's asylum claim was dismissed when she failed to appear for an interview in 1996. Mr. Alade was interviewed in 1997; his asylum claim was then denied. Initial removal hearings were held for them in March 1998, at which point they conceded their removability and renewed their requests for asylum and withholding of removal under sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231(b)(3).

At the removal hearings held later that year, Mr. Alade testified that he feared persecution based upon political activity he engaged in while studying at the Universi-

ty of Ife in the late 1980s. Specifically, he claimed to have been detained on numerous occasions as a result of his involvement in various anti-government student activities, and stated that there was an outstanding warrant for his arrest. (Mr. Alade presented no documentation to support his claims that he had belonged to certain student groups and that the Nigerian government, which had changed several times since his 1989 departure, was still looking for him.) He also indicated that while living in Nigeria, he was beaten by Muslim fundamentalists because of his Christian faith. Religious persecution was the only ground for asylum that Mr. Alade listed in his original asylum application, despite the fact that there were opportunities to discuss political persecution.

Mrs. Alade also testified that she feared religious persecution as a Christian. However, neither she nor her husband offered documentary evidence to rebut a State Department report noting that Christians in Nigeria generally enjoy religious freedom. Although Mrs. Alade suggested in her asylum application that she converted to Christianity after practicing Islam and as a result, was threatened by her family, she later testified that she practiced the Christian faith as a child with her mother, and lived separately from her Muslim father. Mrs. Alade also lived in England for several years before coming to the United States, but did not apply for asylum there.

The immigration judge deemed the Alades' testimony not credible, and further noted that in Mr. Alade's case, even if the facts alleged were true, they did not rise to the level of persecution. Having found that they had established neither past persecution nor a well-founded fear of future persecution, the immigration judge denied the Alades' applications for asylum and withholding of removal, but granted them the privilege of voluntary departure. In August 2002, the BIA affirmed without issuing an opinion.[1] The Alades appeal.

## II. ANALYSIS

### A. The Hearing Transcript

■ The Alades complain that the removal hearing transcript reveals 30 instances in which responses from Mrs. Alade are "indiscernible." Thus, the petitioners argue, they were denied meaningful review of their asylum claim when the BIA failed to obtain a more complete record before reviewing the immigration judge's credibility findings, and the case should be remanded so that Mrs. Alade can create a more accurate record. The Alades cite no case law for this proposition. Moreover, in *Ortiz–Salas v. I.N.S.*, 992 F.2d 105, 106 (7th Cir.1993), we found no due process violation although 292 notations in the hearing transcript were "indiscernible" or "inaudible," because the petitioner failed to show that a complete and accurate transcript would have changed the case's outcome. This case is similar, as the Alades have failed to explain how they were prejudiced by any gaps in the transcript. (Moreover, in many cases the substance of the "indiscernible" text is evident from follow-up questions and testimony.) We therefore find that the BIA's

---

1. 8 C.F.R. § 3.1(a)(7)(ii)(A)-(B) allows for affirmance without opinion in cases in which a BIA member "determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial," and that the issues on appeal are either clearly governed by precedent or not substantial.

(We note that regulations previously cited as 8 C.F.R. §§ 3.1, 3.2 (2002) can now be found at 8 C.F.R. §§ 1003.1, 1003.2 (2003), respectively. Because the parties referred to the 2002 regulations, and because the new regulations are either identical or substantially similar to the older versions, we continue to refer to the 2002 regulations.)

failure to perfect the transcript does not constitute grounds for remanding this case.

### B. The Country Reports

■ The Alades further assert that both parties submitted out-of-date 1996 State Department reports to the immigration judge regarding conditions in Nigeria, although a 1997 report had been available since January 1998. They argue that the immigration judge should have taken judicial notice of the fact that the old reports may not have accurately reflected conditions in Nigeria at the time, and looked at the new report *sua sponte.* Additionally, they note that the immigration judge lacked country reports for events that occurred between 1986 and 1989. Therefore, they claim, the immigration judge made inappropriate credibility determinations regarding the Alades' description of events from that time period, and was unable to assess the extent to which Nigeria has changed from the late 1980s to the present. However, the Alades cite no cases holding that either the immigration judge or the BIA has a duty to find appropriate data (indeed, they cite no case law whatsoever in support of their argument). Rather, the burden of proof is on the asylum-seeker. *See Meghani v. I.N.S.,* 236 F.3d 843, 848 (7th Cir.2001) ("[W]e find no cases in which we held that the BIA is *required* to *sua sponte* take administrative notice of the most recent country report...."); 8 C.F.R. § 208.13(a) ("The burden of proof is on the applicant for asylum to establish that he or she is a refugee...."). Furthermore, the Alades have not pointed us to any information in the 1997 report or the reports from the late 1980s that would have changed the outcome of their case. Therefore we reject this argument.

### C. The FGM Claim

■ Finally, the Alades assert that since they have three young daughters who will likely be constructively deported with their parents, the immigration judge had a duty to consider the practice of female genital mutilation ("FGM") in Nigeria when assessing their asylum claims. FGM, which involves " 'the removal or infibulation (or both) of whole or part of the external female genitals (clitoris, labia minora, and labia majora),' " is a "horrifically brutal procedure" with negative, long-term consequences for its victims. *See Nwaokolo v. I.N.S.,* 314 F.3d 303, 308–09 (7th Cir.2002). We are greatly troubled by the possibility that the Alades' children might be subjected to this practice or that the Alades might be harassed for preventing their children from undergoing this procedure. However, as explained earlier, the immigration judge had no duty to take administrative notice of FGM when the Alades failed to raise this point themselves.

■ The Alades make an alternative argument that the BIA erred in affirming the immigration judge's opinion without addressing their FGM claim, which the Alades raised for the first time in their brief to the BIA. They rely on *Nwaokolo,* in which this court stayed the removal of the petitioner and her four-year-old daughter, a U.S. citizen, upon finding that the petitioner had a "better than negligible chance of prevailing on the merits" of her FGM claim. *Id.* at 304. Their reliance is misplaced. The petitioner in *Nwaokolo* properly moved to reopen her case numerous times, and provided supporting documentation regarding FGM. *See id.* at 308–09. By contrast, the Alades, who were represented by counsel throughout their asylum proceedings, failed to file either a motion to reopen their claim to include the FGM issue or any supporting documentation (other than copies of their children's

passports and birth certificates). *See, e.g., Tupacyupanqui–Marin v. I.N.S.,* 447 F.2d 603, 607 (7th Cir.1971) (explaining that failure to support a motion to reopen by affidavit or other evidentiary material provides an independent ground for refusing to reopen a case); 8 C.F.R. § 3.2(c)(1) ("A motion to reopen proceedings ... shall be supported by affidavits or other evidentiary material."). Thus, the FGM issue was not properly before the BIA, and the BIA did not err in declining to address it in its opinion. Additionally, although we are not unsympathetic to the Alades' concerns, in light of the their failure to point us to appropriate supporting documentation regarding their FGM claim even on appeal to this court, we have no proper basis for remanding this case.

## III. CONCLUSION

For the foregoing reasons, the BIA's order is affirmed.