

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-14-2005

# Attoh-Mensah v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3248

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Attoh-Mensah v. Atty Gen USA" (2005). *2005 Decisions.* Paper 552.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/552

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 03-3248/04-1878

SEMEGNON YAOVISTOU ATTOH-MENSAH,

Petitioner

v.

ALBERTO GONZALES,[*] Attorney General
of the United States,

Respondent

ON PETITION FOR REVIEW OF ORDERS OF THE
BOARD OF IMMIGRATION APPEALS

(No. A95-370-889)

Argued Thursday, March 31, 2005

Before: ALITO, SMITH, and FISHER, Circuit Judges

---

[*]Substituted pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Counsel: Francois-Ihor Mazur (argued)
     2207 Chestnut St.
     Philadelphia, PA 19103
     *Attorney for Petitioner*

     Peter D. Keisler
     Linda S. Wernery
     Janice K. Redfern (argued)
     Office of Immigration Litigation
     Civil Division
     U.S. Department of Justice
     P.O. Box 878, Ben Franklin Station
     Washington, D.C. 20044-0878
     *Attorneys for Respondent*

(Filed September 14, 2005)

---

## OPINION OF THE COURT

---

PER CURIAM:

These are petitions for review of two decisions of the Board of Immigration Appeals ("BIA"), one affirming an order of removal issued by an Immigration Judge ("IJ") and the other denying a motion to reopen. We are troubled by some of the allegations made by the petitioner, but the record before us compels us to uphold the BIA's decisions.

I.

Semegnon Yaovisitou Attoh-Mensah, a 35-year-old married architect, is a native and citizen of Togo. President Gnassingbe Eyadema, a military dictator, ruled Togo from

1967 until his death in February 2005.  Although Togo technically legalized political parties in 1991, the State Department's Country Report states that security forces harassed and abused political opponents and others.  See Joint Appendix ("App.") at 92–95.

Attoh-Mensah claims that he was first persecuted for his political beliefs in 1992, when he was beaten by military authorities who were looking for two of his brothers.  In 1998, Attoh-Mensah joined a political group called the Union of Forces for Change ("UFC"), which actively opposed President Eyadema, and Attoh-Mensah later assumed a leadership position with a local UFC chapter and participated in public protests.

The events that allegedly prompted Attoh-Mensah to leave Togo were said to have occurred on July 3, 2001.  Attoh-Mensah provided the following account.  On the evening in question, Attoh-Mensah was one of five local UFC leaders who met to discuss a march planned for the next day.  App. at 51–52.  During the meeting, soldiers captured the five leaders and, in an effort to persuade them to stop the march, took them to a police station and beat them.  Id. at 53.  The leaders were released shortly before midnight.  Id. at 53–54, 56.

Attoh-Mensah realized that it would be impossible to stop the march, and he decided to leave the country in order to avoid further trouble.  He did not return to his own home to pick up his clothes or his passport, but instead, after stopping briefly at a friend's house, he traveled on foot that night through the "brush" from Togo's capital city, Lome, to the country's western border with Ghana.  Id. at 56–57, 90.  He gave a

"tip" to soldiers at the border and in this way was able to leave Togo and enter Ghana without producing a passport. Id. at 59–60.

Once in Ghana, Attoh-Mensah took a taxi to his cousin's house. He wanted to proceed on to the United States, but in order to do that, he needed his passport and proof that he had left Togo legally. Id. at 62–63. Attoh-Mensah's cousin went back to Togo and spoke with Attoh-Mensah's sister-in-law, who was able to have his passport marked with a stamp indicating that he had left Togo legally on July 31. Id. at 61. On that same day, Attoh-Mensah flew from Ghana to New York.

## II.

After arriving in the United States, Attoh-Mensah sought asylum, withholding of removal, and relief under the United Nations Convention Against Torture.[2] An IJ conducted a hearing and denied Attoh-Mensah's application. The IJ found that Attoh-Mensah lacked credibility and that he had failed to provide corroboration for his account of events in Togo. The IJ listed at least eight aspects of Attoh-Mensah's story that he found problematic. Some were relatively insignificant, but several went to the heart of Attoh-Mensah's claim. The IJ was not convinced: 1) that Attoh-Mensah was beaten on July 3; 2) that he left Togo on foot that same night; 3) that he remained in Ghana only because he needed his passport; and 4) that his sister-in-law obtained a fraudulent stamp

---

[2] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"), 1465 U.N.T.S. 85, G.A. Res. 39/46, U.N. GAOR, 39th Sess., Supp. No. 51, at 197, U.N. Doc. A/39/51 (1984).

on his passport and brought it to him in Ghana. The IJ added that Attoh-Mensah had failed to provide corroboration by family members who should have been able to back his story.

Attoh-Mensah filed a notice of appeal to the BIA. However, his attorney did not submit a timely brief, and the BIA affirmed the IJ's ruling without opinion. Id. at 19–22. Attoh-Mensah then filed a petition for review by our court.

Attoh-Mensah subsequently filed a motion to reopen before the BIA, mentioning for the first time several improprieties that allegedly occurred during the hearing before the IJ. The BIA denied this motion, and Attoh-Mensah filed a second petition for review. We consolidated that petition with the previously filed petition.

### III.

We must address three issues: first, whether the BIA's order upholding the IJ's merits decision is adequately supported by the record; second, whether the BIA abused its discretion in denying the motion to reopen; and third, whether the administrative transcript is so inadequate that it denied Attoh-Mensah due process.

### A.

Attoh-Mensah argues that the IJ erred in holding that he was not entitled to withholding of removal and was not eligible for asylum.[3] In order to be eligible for

---

[3]Attoh-Mensah originally sought relief under the CAT, but he waived that argument on appeal by not raising it before the BIA. Abdulrahman v. Ashcroft, 330 F.3d 587, 594–95 (3d Cir. 2003) ("an alien is required to raise and exhaust his or her remedies

asylum, Attoh-Mensah was required to prove that he is unwilling or unable to return to Togo "because of persecution or a well-founded fear of persecution on account of . . . political opinion." See 8 U.S.C. § 1101(a)(42)(A). In order to obtain withholding of removal, Attoh-Mensah had to show that future persecution based on political opinion was "more likely than not" to occur. Lukwago v. Ashcroft, 329 F.3d 157, 182 (3d Cir. 2003) (quoting 8 C.F.R. § 208.16(b)(2); citing 8 U.S.C. § 1231(b)(3)(A) and INS v. Cardoza-Fonseca, 480 U.S. 421, 430–31 (1987)).

In this case, because the BIA affirmed the IJ's decision without issuing its own opinion, we review the IJ's decision. Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003). The IJ's findings of fact must be upheld "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). See also INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992); Gao v. Ashcroft, 299 F.3d 266, 271 (3d Cir. 2002). Credibility determinations are reviewed under the same standard. See Dia v. Ashcroft, 353 F.3d 228, 248–49 (3d Cir. 2003) (en banc).

The IJ denied relief because he disbelieved Attoh-Mensah's story. In a 14-page opinion, the IJ identified numerous perceived inconsistencies in Attoh-Mensah's account. The IJ also noted that Attoh-Mensah's "demeanor" and "hesitance," "his long delays before he responded to questions, [and] his non-responsive answers, were indications . . .

as to each claim or ground for relief if he or she is to preserve the right of judicial review of that claim").

6

that [he] was not answering truthfully." App. at 31.

The most glaring inconsistency cited by the IJ concerns the date when Attoh-Mensah left Togo. Attoh-Mensah testified that he fled to Ghana on the night when he was beaten, July 3, but his passport bears a stamp indicating his entry on July 31, a full four weeks later.[4] Id. at 33. Based on the discrepancy between the testimony and documents, the IJ chose to believe that Attoh-Mensah had left "his home country through normal means on July 31 and simply travel[ed] to Acra, Ghana, a neighboring country where there are flights destined to the United States." Id.

To be sure, Attoh-Mensah has an alternative explanation. He says that he fled to Ghana on the night when he was beaten and waited there until his sister-in-law could obtain fraudulent stamps on his passport so that he could fly to the United States. This certainly could have happened, but the IJ, who had the benefit of listening to Attoh-Mensah in person, rejected this version of events.

The IJ also found that Attoh-Mensah failed to provide corroboration for his testimony. Neither Attoh-Mensah's cousin, with whom he allegedly stayed in Ghana, nor his sister-in-law, who reportedly brought him his passport, corroborated his story through documentation or testimony. "[A]n applicant need not provide evidence corroborating

---

[4] The IJ also observed that Attoh-Mensah's story changed as his testimony unfolded. "At one point, the respondent said that his cousin went back to Togo to get the respondent's passport. Later it seemed the respondent was saying that his sister-in-law . . . had arranged to have the respondent's passport transported to the respondent in Ghana." Id. at 32.

the specifics of his or her testimony unless it would be 'reasonable' to expect the applicant to do so." Abdulai v. Ashcroft, 239 F.3d 542, 551 (3d Cir. 2001). In this case, Attoh-Mensah seems to have had the time and opportunity to obtain corroborating evidence from his sister-in-law or cousin, but he did not do so.

"[I]f it would be 'reasonable' to expect corroboration, then an applicant who neither introduces such evidence nor offers a satisfactory explanation as to why he or she cannot do so may be found to have failed to meet his or her burden of proof." Id. Attoh-Mensah contends that he satisfactorily explained his lack of corroboration. His notice of appeal to the BIA stated that the IJ "did not permit the respondent's sister-in-law to provide in court testimony regarding the manner in which the respondent's passport had been stamped with an entry stamp into Togo." App. at 40. But Attoh-Mensah did not provide the BIA with any further information relating to this allegation and, as noted, did not even file a timely brief with the BIA.

The sentence in the notice of appeal has obvious deficiencies. First, it provides no details about what the IJ allegedly did or said to prevent Attoh-Mensah's sister from testifying. Without more information, it is impossible to analyze the legal significance of the alleged conduct. More important, the sentence does not point to any support in the record for the allegation or provide any explanation for the lack of such record support. Nor does the sentence reveal what proof would have been offered if a proceeding to explore the allegation had been conducted. Whether true or false, the allegation is

8

troubling, but we cannot say that the one conclusory and unsubstantiated sentence in the notice of appeal is enough by itself to overturn the administrative holding that Attoh-Mensah failed to provide an adequate explanation for the lack of corroboration regarding the July 31 date. Nor can we say that the sentence is sufficient to compel a reasonable fact finder to accept Attoh-Mensah's account.

Having decided that substantial evidence supports the IJ's decision to disbelieve Attoh-Mensah's uncorroborated story about when he left Togo, we find it unnecessary to discuss the additional inconsistencies flagged by the IJ. The inconsistency regarding the date of Attoh-Mensah's trip from Togo to Ghana goes directly to the heart of Attoh-Mensah's claim. Upon deciding that Attoh-Mensah did not leave Togo on the night when he was allegedly beaten, the IJ was entitled to disbelieve Attoh-Mensah's account of the events that allegedly preceded his departure. Although we might have reached a different conclusion were we the fact finders in this case, we cannot hold that a reasonable adjudicator would be compelled to disagree with the IJ's finding. Accordingly, we cannot disturb the BIA's decision upholding the denial of asylum and withholding of removal.

B.

As noted, Attoh-Mensah also contests the BIA's denial of his motion to reopen his proceeding. "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not

9

have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1).[5]

"[W]e review the BIA's decision to deny reopening for abuse of discretion, mindful of the broad deference that the Supreme Court would have us afford." Lu v. Ashcroft, 259 F.3d 127, 131 (3d Cir. 2001) (internal quotes and citations omitted). See also INS v. Doherty, 502 U.S. 314, 323 (1992); Ezeagwuna v. Ashcroft, 325 F.3d 396, 409 (3d Cir. 2003).

More than a year after his hearing, Attoh-Mensah's motion to reopen alleged for the first time that the IJ surreptitiously turned the tape recorder on and off during the hearing, creating gaps at important junctures in the record. The motion was supported by an affidavit from the attorney who represented Attoh-Mensah during the hearing, and in the affidavit the attorney stated that the transcript is "incomplete" and "misleading." App. at 16. She added:

> Mr. Attoh-Mensah's brother and sister-in-law were present at the hearing and were prepared to testify and corroborate Mr. Attoh-Mensah's testimony. That they did not testify was solely due to the IJ not wishing them to testify. This was made abundantly clear by the IJ at the proceedings, but, unbeknownst to me at the time of the hearing that portion of the testimony was never recorded by the IJ and thereby became "off the

---

[5] "Motions to reopen for the purpose of applying for discretionary relief will not be granted if the respondent had a full opportunity to apply for such relief at the former hearing unless the relief is sought on the basis of subsequent circumstances." 1–3 Charles Gordon et al., Immigration Law and Procedure § 3.05(7)(a) (Release No. 109, June 2005). "The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board . . . . The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief." 8 C.F.R. § 1003.2(a). See also INS v. Rios-Pineda, 471 U.S. 444, 451 (1985).

10

record".

Id.

We do not take these allegations lightly. Nor, we assume, does the BIA, which nevertheless denied Attoh-Mensah's motion for two independent reasons. First, it explained that even if the allegations were true, they were immaterial because "the proposed testimony of the witnesses, as described by the respondent, would not have changed the outcome in these proceedings." Id. at 6. Second, the BIA held that Attoh-Mensah "is not describing new evidence that was not previously available," so he could not meet the standard for a motion to reopen. Id. at 7. In the BIA's view, he lost his chance when he failed to argue the issue in his original merits appeal.

We find the second reason convincing. If the IJ had actually prevented Attoh-Mensah's family members from testifying, Attoh-Mensah and his lawyer would have known this as soon as it happened. While it is certainly possible that Attoh-Mensah and his lawyer were not aware that the IJ had switched off the recording device at various points during the proceeding, they could have discovered this by looking at the transcript, which was available at the time of the initial appeal. In short, Attoh-Mensah's motion to reopen contained evidence that was available and could have been discovered or presented at the former hearing. 8 C.F.R. § 1003.2(c)(1). The BIA's denial adhered to the proper legal standard, and must be upheld.

A recent precedent from another court of appeals bolsters our conclusion. In

11

Strato v. Ashcroft, 388 F.3d 651 (8th Cir. 2004), two aliens filed a motion to reopen, arguing that the "new evidence" they planned to present was that the IJ barred a corroborating witness from testifying about certain matters the IJ deemed irrelevant. The Eighth Circuit found no merit in this argument because "the specific facts forming the basis of [the aliens'] motion remained unspoken at the hearing, not because the facts were unavailable for presentation, but because the IJ excluded them on relevancy grounds." Id. at 654–55. The same concept applies here: while Attoh-Mensah's family members did not testify, the substance of their remarks was available at that time, and any objections should have been voiced on the direct appeal.

The Court went on to observe that the aliens' motion to reopen "merely restates the legal argument advanced in the original appeal to the BIA, i.e., that the IJ's choice to exclude further testimony by [the witness] resulted in a deprivation of due process." Id. at 655. The same is true here. Attoh-Mensah could have (and should have) raised arguments about the IJ's treatment of corroborating witnesses in his original appeal to the BIA. The allegations, serious though they may be, are not grounds for granting a motion to reopen.

C.

Attoh-Mensah's final argument is that the BIA denied him due process of law when it affirmed his initial appeal based on a flawed and incomplete record. Aliens facing removal have due process rights. See Sewak v. INS, 900 F.2d 667, 671 (3d Cir.

12

1990); see also Bridges v. Wixon, 326 U.S. 135, 154 (1945) (deportation proceedings involving aliens must meet "essential standards of fairness"). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (internal quotes and citation omitted); see also Marincas v. Lewis, 92 F.3d 195, 204 (3d Cir. 1996) (calling a "complete record" one of "the most basic of due process protections," and explaining that its absence "insulates the INS's denial of asylum from effective administrative and judicial review").

"[B]ecause agency action is entitled to a presumption of regularity, [the alien] bears the burden of proving that the BIA did not review the record when it considered the appeal." Abdulai, 239 F.3d at 550 (internal brackets, ellipsis, quotes and citation omitted). As described above, Attoh-Mensah claims that the trial transcript contains gaps during which the IJ dissuaded witnesses from corroborating his story. We are disturbed by these allegations,[6] but we hold, for the reasons stated above, that the alleged improprieties in

---

[6] If true, the practice of turning a court recorder on and off to produce a selective record of proceedings violates any number of regulations, to say nothing of ethical standards. As just one example, Operating Policies and Procedures Memorandum 03-06, from the Office of the Chief Immigration Judge, dated October 10, 2003, which concerns "Procedures for Going Off-Record During Proceedings," states that IJs "must maintain and preserve a thorough and complete record of the proceeding." It continues:

Immigration Judges should limit all off-record dialogue. On rare occasions, the Immigration Judge may authorize such an off-record dialogue when necessary to the fair, expeditious and proper conduct of the hearing. The Immigration Judge may initiate the decision to go off-record or a party may

13

this case did not deprive Attoh-Mensah of due process. Attoh-Mensah was afforded an administrative remedy, the initial appeal to the BIA, but he failed to present his claim in a procedurally proper manner.

IV.

Last, we wish to express our concern about the poor quality of the hearing transcript. It is apparent that the translator spoke English in a manner that made it difficult for the IJ and the person who transcribed the proceedings to understand what the translator said. The transcription of Attoh-Mensah's testimony states at 37 points that the translation was "indiscernible." In addition, there are instances in which the IJ appears to have misunderstood Attoh-Mensah due to the translator's accent. At least in this case, these problems do not rise to the level of a violation of due process. Cf. Ortiz-Salas v. INS, 992 F.2d 105, 106 (7th Cir. 1993) (hearing transcript with 292 "inaudible" or

---

make such a request. In these instances, Immigration Judge should inform the parties that off-record discussions will be summarized on the record. The decision to authorize such an off-record discussion is solely within the discretion of the Immigration Judge, and the Immigration Judge should make clear on the record that the parties are aware that the tape recorder is being turned off.

When the off-record discussion is completed, whether initiated by the Immigration Judge or by the parties, the Immigration Judge shall summarize the off-record discussion immediately upon returning to the record. Additionally, the Immigration Judge must ask the parties if the summary is a true and complete representation of the off-record discussion and ask the parties if they have anything to add to the summary.

App. at 105–06.

"indiscernible" notations did not violate applicant's due process rights because he could not demonstrate prejudice). But they are disturbing nonetheless.

V.

For the foregoing reasons, we deny Attoh-Mensah's petitions for review.