**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MINATI MONDAL; SHAMSUDDIN
AHMAN; CEEHAM SHAMS;

      Petitioners,

  v.

ALBERTO R. GONZALES, Attorney
General,

      Respondent.

No. 05-9600
(No. A 97 936 974)
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

---

Members of the Mondal family, citizens and nationals of Bangladesh,

petition for review of a decision of the Board of Immigration Appeals (BIA or

Board) denying their claims for asylum and for restriction on removal. We have

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. The court generally disfavors the citation of orders and
judgments; nevertheless, an order and judgment may be cited under the terms and
conditions of 10th Cir. R. 36.3.

jurisdiction to review the agency's decision under 8 U.S.C. § 1252(a)(1), and we deny the petition for review.

## I. Background

Minati Mondal, the lead petitioner and mother of the family, is a lifelong Christian. The other petitioners are Dr. Shamsuddin Ahman, Ms. Mondal's Muslim husband, and Ceeham Shams, the couple's adult Christian daughter. The family's application for asylum, restriction on removal, and protection under the Convention Against Torture is premised on the lack of toleration in Bangladesh for the parents' interfaith marriage.

At the hearing before the Immigration Judge (IJ), the parties offered testimony from Ms. Mondal and also expert testimony from John Adams, a retired university professor and current consultant on economics and salvation studies. Ms. Mondal described religious clashes while living with her husband's family in Bangladesh. Her in-laws pressured her to follow the precepts of the Islamic faith, changed her name, teased her, pushed and hit her, pulled her hair, threatened her, refused to eat with her, and forced her to do all the chores. "The worst incident of [her] life," occurred when she refused to fast on a day during the month of Ramadan, February 1994. Admin. R. at 210. Her brother-in-law pushed her against a wall and attempted to choke her. Ms. Mondal and Dr. Ahman decided that the situation was intolerable and that she should leave Bangladesh.

Ms. Mondal entered the United States in May 1994 and Dr. Ahman and Ms. Shams followed in August 1995. Ms. Mondal was approved for student status; her husband and daughter were classified as student-dependents. Both parents registered with educational institutions and began programs of instruction. As of March 1, 2003, however, they had stopped attending classes and the family's legal status lapsed. After discussing the situation with an attorney, Ms. Mondal gathered documentation, and on September 12, 2003, attempted to file an application for asylum and restriction.

In support of her application, Ms. Mondal testified that if she returned to Bangladesh, her family problems would re-erupt, fundamentalists would attempt to kill her, and the government would not protect her. She also offered expert testimony from Dr. Adams, who has traveled to Bangladesh and also prepared talks and articles on the country. Dr. Adams testified that an interfaith couple in Bangladesh would be shunned by Muslim family members. If the couple moved to another part of Bangladesh, there would still be "a very high risk" that Ms. Mondal, as the non-Islamic partner in an interfaith marriage, would be subject to "intimidation, violence, rape, and possibly murder." Admin. R. at 139.

At the close of testimony, the IJ reviewed the evidence and concluded that the asylum application was not timely filed. He noted that, when Ms. Mondal's status lapsed in March 2003, she had been attending college and university classes in the United States for nine years. Under these circumstances, the IJ

found, she should have been able to file an asylum application "within a short period after falling out of status," and that the September 2003 asylum application was not filed within a reasonable time. *Id.* at 61. He also determined that there was no significant change in country conditions during the relevant period. Accordingly, the family members were statutorily ineligible for asylum.

The IJ then determined that the record failed to show past persecution or a probability of future persecution. He therefore denied the family's applications for restriction on removal and protection under the Convention Against Torture, as being "without any merit whatsoever." *Id.* at 64. On appeal, the BIA adopted and affirmed the IJ's denial of relief. In response to the family's argument that the transcript of the hearing was inadequate, the BIA acknowledged that the transcript of the hearing "contain[ed] numerous 'Indiscernible' entries," but concluded that it was "sufficiently complete upon which to base a determination." *Id.* at 890.

## II. Discussion

### A. Timeliness of Asylum Application

Petitioners seek review of the finding that Ms. Mondal's application was untimely. Generally, an alien must file an asylum application "within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). The Attorney General, however, may accept an otherwise untimely application if the alien demonstrates either (1) "the existence of changed circumstances which

-4-

materially affect [her] eligibility for asylum" or (2) "extraordinary circumstances relating to the delay in filing an application within the period specified." § 1158(a)(2)(D).  The term "changed circumstances" includes "[c]hanges in conditions in the applicant's country of nationality."  8 C.F.R. § 208.4(a)(4)(i)(A).  The "extraordinary circumstances" exception applies to an asylum applicant who was in lawful status during the one-year period after arrival, then filed within a "reasonable period" following the lapse of status. 8 C.F.R. § 208.4(a)(5)(iv).

A federal court lacks jurisdiction to review the denial of an asylum application for untimeliness if the petitioner challenges discretionary decisions or findings of fact, but it may resolve constitutional claims or matters of statutory construction.  *Ferry v. Gonzales*, Nos. 03-9526, 04-9555, 05-1014, 2006 WL 2258805, at *9 (10th Cir. Aug. 8, 2006).  However, this court will reject an attempt "to shoehorn [a] claim into the 'question of law' category" that "simply does not fit there."  *Vasile v. Gonzales*, 417 F.3d 766, 768 (7th Cir. 2005).

In recognition of this court's limited jurisdiction, the family members couch their issues as questions of law.  They assert that the IJ committed legal error in failing to recognize a change in country conditions:  the rise in fundamentalism in Bangladesh since the World Trade Center attacks on September 11, 2001, and the invasion of Iraq in March 2003 (which coincided with Ms. Mondal's leaving her studies).

Analytically, "the existence of 'changed circumstances' that materially affect eligibility for asylum is a predominately factual determination, which will invariably turn on the facts of a given case." *Ramadan v. Gonzales,* 427 F.3d 1218, 1221-22 (9th Cir. 2005). Thus, this aspect of the family's petition for review is "directed solely at the agency's discretionary and factual determinations" and it "remain[s] outside the scope of judicial review." *Ferry,* 2006 WL 2258805, at *9 (quotations omitted).

Similarly, the family asserts that, as a matter of law, Ms. Mondal's asylum application was timely because it was filed within a reasonable time after the lapse of her student status. We conclude that the BIA and the IJ did not misinterpret the law. Indeed, Ms. Mondal's application, filed over six months after her lapse of status, was treated in accordance with the agency's interpretation of its regulation, 8 C.F.R. § 208.4(a)(5)(iv). An asylum applicant is expected to file as soon as possible after termination of a lawful immigration status. Asylum Procedures, 65 Fed. Reg. 76121, 76123 (Dec. 6, 2000). A delay of six months or longer is usually not considered reasonable. *Id.* at 76124. This question also challenges a discretionary determination and is not reviewable.

A final challenge to the timeliness determination arises from the condition of the hearing transcript. The family contends that the transcript is so replete with entries of "indiscernible" and "no audible response" that it amounts to a due process violation. The BIA's rejection of this argument is a legal determination,

which we review de novo.  *Niang v. Gonzales,*  422 F.3d 1187, 1196 (10th Cir. 2005).

Due process requires that an alien at a removal hearing must have "an opportunity to be heard, to cross-examine witnesses against him, and to produce evidence . . . and that the decision be supported by substantial evidence." *Hadjimehdigholi v. INS*, 49 F.3d 642, 649 (10th Cir. 1995) (internal quotation marks omitted).  One of an applicant's rights in an immigration proceeding is that "a complete record shall be kept of all testimony and evidence produced at the proceeding."  8 U.S.C. § 1229a(b)(4)(C).  It is the government's "duty to prepare a reasonably accurate, reasonably complete transcript." *Ortiz-Salas v. INS,* 992 F.2d 105, 106 (7th Cir. 1993).  The  absence of a "reasonably complete transcript" can "hamper[] the ability of an alien to mount a challenge to the proceedings that were conducted before the IJ" and "foreclose effective administrative and judicial review." *Kheireddine v. Gonzales* 427 F.3d 80, 84 (1st Cir. 2005) (quotation omitted).

To a establish a due process violation based on an "inaccurate or incomplete transcription," however, an alien must show "specific prejudice to his ability to perfect an appeal." *Id.* at 85 (quotation omitted).  "[P]rejudice to warrant a remand cannot be shown if the transcription failure does not make any difference to the outcome of the review." *Id*. at 86.  In other words, prejudice

requires a showing "that a complete and accurate transcript would have changed the outcome of the case." *Ortiz-Salas,* 992 F.2d at 106.

Here, there is no question that the agency failed to fulfill its responsibility to prepare a reasonably complete transcript. The transcript contains numerous entries of "no audible response" or "indiscernible," particularly during Ms. Mondal's testimony. Indeed, there are 211 such entries in her testimony alone, rendering some dialogues incomprehensible.[1] We do not condone the agency's careless preparation of the record: the poor quality of the transcript is disturbing.[2]

Nevertheless, the transcript's shortcomings do not significantly affect the agency's decision to consider her asylum application untimely. The existing transcript provides Ms. Mondal's account of her reasons for not filing earlier. According to her testimony, she used the time between March and September 2003 to talk to her attorney, gather documents from Bangladesh, and prepare the application. Admin. R. at 107-08. She does not assert that a complete transcript

---

[1] Additionally, the transcript contains unjustifiable misspellings like "Lybia" for the country Libya, Admin. R. at 86-88, 93, 104; "mosk" for mosque, *id.* at 139; "Docka" for Dhaka, the capital of Bangladesh, *id.* at 136, and "bazaar" for the word bizarre, *id.* at 63.

[2] The Attorney General has apparently recognized that flawed transcripts may be a systemic problem. In a recent press release, he announced plans to improve "the Immigration Courts' ability to record, transcribe, and interpret court proceedings." Dep't of Justice, *Attorney General Alberto R. Gonzales Outlines Reforms for Immigration Courts and Board of Immigration Appeals* (Aug. 9, 2006) (available at http://www.usdoj.gov/opa/pr/2006/August/06_ag_520.html).

would show other barriers to filing. We reject the due process claim as it relates to the timeliness of her application and therefore do not reach the family's contentions on their entitlement to asylum.

B.    Restriction on Removal

In addition, the family seeks review of the IJ's and BIA's denial of their requests for restriction on removal. This type of relief requires a showing that the alien's "life or freedom would be threatened in [the proposed country of removal] because of [her] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien's life or freedom is presumed to be threatened if she "is determined to have suffered past persecution in the proposed country of removal." 8 C.F.R. § 208.16(b)(1)(i). Otherwise, the alien must show "it is more likely than not" that she would be persecuted upon removal. *Id.* § 208.16(b)(1)(iii).

The family's due process argument, asserted in the context of the asylum timeliness determination, is also applicable to restriction on removal. The question is whether the flawed hearing transcript prejudiced the family's ability to appeal the denial of restriction on removal to the BIA or to seek review in this court. This is a legal question which we subject to de novo review. *See Niang,* 422 F.3d at 1196.

Our review of the record for information germane to restriction on removal reaffirms our conviction that the transcript is unsatisfactory. Nonetheless, a clear

outline of Ms. Mondal's narrative emerges from a reading of her testimony.

Moreover, the family does not claim that her "indiscernible" statements could

have supplied outcome-changing facts.[3]  Without a showing that transcription

errors prejudiced the family's ability to present their argument, we must conclude

that the transcript's deficiencies do not amount to a due process violation.  *See*

*Ortiz-Salas,* 992 F.2d at 106-07 (holding that hearing transcript with 292

"inaudible" or "indiscernible" notations did not violate applicant's due process

rights because he could not demonstrate prejudice).

As to the factual determinations relevant to restriction on removal, this

court does not weigh the evidence or evaluate the credibility of witnesses.  *Yuk v.*

*Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004).  "[F]indings of fact are

conclusive unless the record demonstrates that 'any reasonable adjudicator would

---

[3]     In many instances, the substance of the obscured testimony is evident from
its context. An example is the following colloquy on cross-examination:

> Q.     But you agreed to get married in a Muslim (indiscernible),
>         correct?
> A.     Yes. . . .
> Q.     Did you change your name to a Muslim name?
> A.     Yes (indiscernible).
> Q      Okay.  So it looks like, to the in-laws, that you were becoming a
>        Muslim, correct?
> A.     Yes, (indiscernible).
> Q.     But then when you didn't that's when the problem started, right?
> A.     (indiscernible).
> Q.     All right. . . .

R., at 114-15.

be compelled to conclude to the contrary.'" *Ferry*, 2006 WL 2258805, at \*10 (quoting 8 U.S.C. § 1252(b)(4)(B)).  Because the BIA adopted and affirmed the IJ's decision in a brief opinion, we review the BIA's opinion by "consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

The IJ based his denial of restriction on removal on specific findings.  He found that the record did not show past persecution of Ms. Mondal:  she "resided in her country for a good part of her adult life and her most serious problem was [the] bout with the brother-in-law."  Admin. R. at 64.  Also, the IJ determined, Dr. Adams' testimony concerning the basis for Ms. Mondal's fear of future persecution was unsupported.  Indeed, the IJ found that Dr. Adams' opinion was "a bazaar [sic] statement for an academic person to make."  *Id.* at 63.  In sum, the IJ denied the requested relief because he determined that the case "falls dramatically short of being anything that could properly be granted."  *Id.* at 64.

A careful review of the record reveals that substantial evidence supports the IJ's factual findings.  In their brief, the family members essentially ask this court to substitute their view of Ms. Mondal's testimony and the expert's opinions for that of the IJ and the BIA.  Given the deferential standard of review applicable to these proceedings, we cannot take this course.

### III. Conclusion

To the extent that the family challenges discretionary decisions or findings of fact relating to untimeliness of Ms. Mondal's asylum application, we DISMISS the petition for review for lack of appellate jurisdiction. We DENY the remainder of the petition for review.

Entered for the Court

Robert H. Henry
Circuit Judge